MDL 2140

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN 12 2010

FILED
CLERK'S OFFICE

PLEADING NO. 7

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

IN RE: INTELIUS, INC., POST-
TRANSACTION MARKETING AND
SALES PRACTICES LITIGATION

MDL Docket No. 2140

## OPPOSITION OF THE *BAXTER* PLAINTIFF'S
## TO MOTION FOR TRANSFER AND CONSOLIDATION

Class Plaintiffs Denise Baxter and Evelyn Ackbarali (the "*Baxter* Representatives") for

*Baxter v. Intelius, Inc.*, 8:09-cv-01031-AG-MLG (C.D. Cal.) ("*Baxter*") respectfully submit their

opposition to Intelius Inc.'s motion to transfer this lawsuit to the Western District of

Washington purportedly inccordance with 28 U.S.C. § 1407 (the "Transfer Motion").

### I.       INTRODUCTION

The Transfer Motion is meritless. It attempts to select a favorable forum for Defendant

though only *two* cases are pending nationwide against Intelius, Inc. and Intelius Sales Company

LLC (collectively "Intelius"). Rather than serve the convenience of the parties/witnesses or

promote just and efficient conduct of the litigation, the attempted transfer of the first filed action

to Washington works a significant inconvenience to the California Plaintiffs while negating their

choice of venue to abet the form shopping ambition of Defendant Intellius. Comparing the first filed complaint of the *Baxter* Representatives with the copy-cat filing in the putative transfee case *Kiethly v. Intelius, Inc.*, 2:09-cv-01485-RSM (W.D. Wash.) ("*Kiethly*") serves to underscore that transfer is unwarranted under the well established precepts of 28 U.S.C. § 1404(a), the statute prescribing standards for a transfer by defendant. *In re Royal American Industries, Inc. Sec. Litig.*, 407 F.Supp. 242, 243 (J.P.M.L. 1976) ("where only a minimal number of actions are involved, the moving party bears a strong burden to show that the common questions of fact are so complex and the accompanying discovery so time-consuming as to overcome the inconvenience to the party whose action is being transferred and its witnesses"); MANUAL FOR COMPLEX LITIGATION § 20.131 (4th ed. 2004) (same).

In reality, comparing *Baxter* to *Kiethly* reveals different factual predicates to the causes and different marketing practices being challenged by the respective lawsuits. *Baxter* seeks relief for post-transaction marketing of negative option memberships in informational programs operated by Adaptive Marketing LLC on the Intelius.com website. *Baxter* FAC ¶ 2, 4, 52. The later-filed *Kiethly* complaint only challenges pre-transaction marketing schemes on behalf of a class completely different from that alleged of *Baxter*. *E.g., Kiethly* Compl. ¶ 7, 14, 23. If there is slight factual overlap it pertains to issues that are neither complicated, nor central to the lawsuits. *In re Arizona Beverage Co. Products Marketing and Sales Prac. Litig.*, 609 F.Supp.2d 1369 (J.P.M.L. 2009) (denying transfer and consolidation where movant fails to demonstrate that common factual questions "are sufficiently complex and/or numerous.")

Essentially, different classes are pled by *Baxter* and *Kiethly* for lawsuits requiring different treatment. Indeed, the criteria for class membership, the factual premise, and the class periods are proceeding based on different consumer protection schemes. *Cf., Baxter* FAC ¶ 52, *Kiethly* ¶ 23, a fact dramatized by the class certification motion outstanding in *Baxter*. *See, In re*

*Arizona Beverage Co.*, at 1369 (denying centralization for only three cases with classes that do not overlap). Were these aspects insufficiently distinguishing, *Baxter* also names Connecticut based Adaptive Marketing LLC ("Adaptive") as a Defendant, which is not named in *Kiethly*, given that case' focus on Intelius' internet marketing. (Indeed, the Western District of Washington is less convenient for Adaptive witnesses than the Central District of California).

Furthermore, a review of the discovery needs of the two cases similiarly results in recognizing the cases present wholly exclusive issues with *Baxter* post transaction marketing while *Kiethly* disputes pre-transaction promotion and advertising. This results in a significant portion of ther *Baxter* documents/witnesses located in Connecticut (not Washington) with minimal duplication of document discovery and no simplification. Intelius' loose advocacy corresponds to loose language in describing the matter. For example, Intelius' Transfer Motion refers to a "transfer of actions," but in fact *Kiethly* is the only other case that has been filed in four and one half months after the commencement of *Baxter*. That means Intelius is attempting to use the Panel to transfer first-filed *Baxter* to Washington without legal justification and for the purpose of gaining home court advantage.

The appropriate motion for Defendants would be a 28 U.S.C. § 1404(a) motion. *See*, *F.T.C. v. Cephalon, Inc.*, 551 F.Supp.2d 21, 33 n. 8 (D.D.C., 2008) (holding that sections 1404(a) and 1407 serve related goals but have distinct purposes and inquiries. "Whereas multidistrict litigation is primarily concerned with judicial efficiency in deciding large numbers of related cases, the transfer inquiry under § 1404(a) is oriented more towards the private interests of the individual parties in a given case"). Intelius' failure to file such a motion is due to the fact that it would not be granted, given *inter alia*, the priority accorded the *Baxter* forum (both Denise Baxter and Evelyn Ackbarali are California residents), the Central District's

failiarity with the State statutory scheme of *Baxter*, the inconvenience to Adaptive, and the *first-filed* status of *Baxter*. The fact that Intelius did not seek to transfer *Baxter* under Section 1404 strongly suggests that the Intelius defendants are attempting to wield the multidistrict litigation procedure for improper strategic purposes unrelated to the purposes of Section 1407. Accordingly, the Transfer Motion should be denied. However, if the Panel believes centralization is appropriate, the Central District of California a more suitable forum.

## II.    BACKGROUND

On August 26, 2009, *Baxter* was filed in the Southern District of California. On September 9, 2009 it was transferred to the Central District of California, Southern Division where it is currently pending before the Honorable Andrew J. Guilford. The original complaint in *Baxter* prayed for a California class and alleged violation of California's: (1) Unfair Competition law, CAL. BUS. & PROF. CODE §§ 17200, *et seq.* (the "UCL"), (2) False Advertising Law, CAL. BUS. & PROF. CODE §§ 17200, *et seq* ("FAL"), breach of financial privacy, and conversion. The named defendants of *Baxter* are Intelius, Inc., Intelius Sales Company LLC, and Adaptive Marketing LLC. *Baxter* FAC. ¶¶ 18-20.[1]

The *Kiethly* action was filed later (October 18, 2009) and named Intelius, Inc. and Intelius Sales Company LLC. While *Kiethly* purports to remedy deceptive sales practices related to "Adaptive Programs," Adaptive is not a named defendant. Moreover, the *Kiethly* complaint appears to duplicate substantive portions of the *Baxter* complaint, asserting a nationwide class under Washington's Consumer Protection Act, WASH. REV. CODE §§ 19.86.010, *et. seq.* (the

---

[1] On January 8, 2010, Plaintiff Baxter elected, as was her right, to file a First Amended Complaint ("FAC") in response to the joint Fed. R. Civ. Proc. 12(b)(6) motion to dismiss her original complain. In her FAC, Baxter has joined an additional plaintiff Evelyn Ackbarali and repledcertain of the allegations of her operative complaint against defendants so as to moot any basis for their Rule 12(b)(6) motion. *See* Declaration of William R. Restis in Support of Opposition of the Baxter Plaintiffs to Motion to Transfer and Consolidation ("Restis Decl."), Ex. B (FAC).

"WCPA"). The *Kiethly* plaintiff is a Washington resident that purportedly enrolled in an Intelius product called "Identity Protect." *See, Keithly Compl.* ¶ 7; *See*, Restis Decl., Ex. B at ¶ 3, and Ex. B thereto (the Identity Protect program is marketed pre-transaction). Plaintiffs Donovan Lee and Edith Ana Cramer are Ohio residents with unauthorized charges on their statement for Adaptive's "Family Protect" program, apparently marketed "from Intelius." *Kiethly* Compl. ¶ 8.

On December 14, 2009, Intelius[2] informed the *Baxter* Plaintiffs' that Intelius intended to petition the Panel for an MDL transfer, requesting that *Baxter* stipulate to a stay pending the Panel's ruling. Plaintiffs' counsel responded that a 28 U.S.C. § 1407 petition was inappropriate and improper and that filing a 28 U.S.C. § 1404(a) motion was the appropriate transfer mechanism. On or about December 16, 2009, Intelius filed its motion to transfer.

Thereafter, the *Baxter* Defendants jointly filed a Rule 12(b)(6) motion to dismiss and to strike class allegations on December 21, 2009. In response to the *Baxter* Defendants 12(b)(6) motion, Plaintiffs Denise Baxter and Evelyn Ackbarali filed a First Amended Complaint ("*Baxter* FAC") pursuant to Rule 15(a) on January 8, 2010. The *Baxter* FAC alleges violations of California's UCL, FAL, and Consumers Legal Remedies Act, CAL. CIV. CODE § 1770, et seq. (the "CLRA") on behalf of a California class. FAC ¶ 52. Unlike the *Kiethly* action, the *Baxter* FAC only challenges the post transaction marketing of programs operated by Adaptive.

By Stipulated Order, Intelius was required to file its response to the *Kiethly* complaint by December 8, 2010. On January 6, 2010, Intelius filed a Stipulated Order extending its time to respond to the *Kiethly* complaint until January 11, 2010.[3]

---

[2] Intelius is represented by the Irvine, California office of Jones Day in *Baxter*, and by the Seattle, Washington firm Danielson Harrigan Leyh & Tollefson LLP in *Kiethly*.

[3] This conveniently precludes any party from bringing the contents of Intelius' response to *Kiethly* to the Panel's attention.

On January 11, 2010, the *Baxter* Plaintiffs filed a motion for certification of the class of California persons pled in the FAC. Restis Decl., ¶ 4.

On January 11, 2010, the parties in *Baxter* conducted their Rule 26(f) conference, whereby the *Baxter* Plaintiffs proposed coordination of discovery between the two actions. Adaptive expressed support for this procedure generally, and Intelius agreed.

## III.     ARGUMENT

### A.     TRANSFER IS NOT WARRANTED WHERE ONLY TWO DIVERGENT CASES EXIST

Where just two actions are pending, it is highy unlikely that the common facts will be sufficiently complex or discovery so time consuming as to justify transfer under 28 U.S.C. § 1407. *In re AT & T Broadband Telecom. Serv. Litig.* 237 F.Supp.2d 1380, 1380-81 (J.P.M.L. 2002); *see also, In re Magic Marker Securities Litig.* 470 F.Supp. 862, 865 (J.P.M.L. 1979) (movant has heavy burden where two cases involved); MANUAL COMPLEX LITIG. (Fourth) § 20.131 (2004) (same);

In a case that resonates here, in *In re S.C. Johnson & Son, Inc., Greenlist Label Marketing & Sales Practices Litig.*, this Panel denied defendant S.C. Johnson's motion for transfer and centralization of one action pending in the Central District of California with one other action pending in S.C. Johnson's home district in the Eastern District of Wisconsin. *Id.*, 626 F.Supp.2d 1349 (J.P.M.L. 2009). Much like the instant case, the issue was whether S.C. Johnson's disclosures concerning its Windex and Shout products mislead consumers. *Id.* The Panel found that the overlapping common issues invoved "a relatively uncomplicated issue whether S.C. Johnson's placement of a 'Greenlist' label on its Windex and/or Shout products misleads consumers by conveying the impression that the products have been subjected to a neutral third-party's testing regimen to determine that they are environmentally friendly." *Id.*.

Similarly, in *In re Arizona Beverage Co. supra*, the Panel denied centralization of three actions in three disparate districts, finding that "common legal issues do not predominate, as plaintiffs claims are brought under the laws of their respective states." *Id.*, 609 F.Supp.2d 1369 (J.P.M.L. 2009). The panel stated that "[u]ndoubtedly, the actions share some factual questions as to whether defendants deceptively marketed their iced tea beverages as '100% Natural' or 'All Natural,' when those beverages contain high fructose corn syrup, but movants have failed to convince us that those questions are sufficiently complex and/or numerous." *Id.*. Here, to the extent there are common issues between *Baxter* and *Kiethly*, they relate primarily to whether a single page of the Intelius.com website is deceptive or misleading under either Washington or California law. *See* Thunen Decl., Ex. A. Like *AT&T* and *Arizona Beverage*, these two cases do not present the type of complex factual questions that warrant centralization.[4]

*Baxter* and *Kiethly* similarly address disparate wrongdoing. As stated above, *Kiethly* seeks redress for actions taken on any intelius website, not just www.intelius.com as in *Baxter*. *Cf. Kiethly* Compl., ¶ 23 with *Baxter* FAC ¶ 52. Additionally, *Kiethly* challenges a completely different marketing practice not challenged in *Baxter*. *Cf. Baxter* FAC ¶ 2, 4 with *Kiethly* Compl. ¶ 7, 14 (grouping Intelius product "Identity Protect", marketed pre-transaction, with Adaptive programs marketed post-transaction).[5] Thus, Intelius statement that the cases present "Identical Questions of Fact" is simply incorrect. *See,* Transfer Motion at 8; *In re Children's*

---

[4] *See also*, *In re Aftermarket Automotive Sheet Metal Parts Antitrust Litig.*, 2009 WL 4573458, \* 1 (J.P.M.L. 2009) (denying transfer where only two actions and six defendants); *In re Rite Aid Corp. Wage and Hour Employment Practices Litig.*, 2009 WL 4572867, \* 1 (J.P.M.L. 2009) (denying two action MDL in part because each case alleged violations of separate state laws); *In re: Glaceau Vitaminwater Marketing and Sales Practices Litig.*, 641 F.Supp.2d 1381, 1382 (J.P.M.L. 2009) (denying consolidation of two actions in two districts because "proponents of centralization have failed to persuade us that any common questions of fact are sufficiently complex and/or numerous"); *In re Circuit City Stores, Inc., Restocking Fee Sales Practices Litig.*, 528 F.Supp.2d 1363 (J.P.M.L. 2007) (three cases insufficient).

[5] *See*, Thunen Decl., ¶ 3 (Identity Protect marketed pre-transaction).

*Personal Care Products Liability Litig.*, -- F.Supp. 2d --, 2009 WL 3241245, * 1-2 (J.P.M.L. 2009) (denying consolidation of six actions in two districts because "[a]ny common issues, however, are overshadowed by the non-common ones," including different defendants in each action and different products involved).

Intelius relies on Panel transfer orders that are materially different from the instant litigation, and do not support transfer. Transfer Motion at 8-10. For example, in *In re Vistaprint Corp. Marketing and Sales Practices Litig.*, there were seven actions with redundant Massachusetts state law and federal law classes pled, and all parties agreed that centralization was appropriate. *Id.*, 589 F.Supp.2d 1377, (J.P.M.L. 2008). There were four actions each pleading overlapping national classes in *In re Webloyalty.com Inc. Marketing and Sales Practices Litig.*, and all parties supported centralization. *Id.*, 474 F. Supp. 2d 1353 (J.P.M.L. 2007). *See also, In re America Online, Inc. Version 6.0 Software Litig.*, 162 F.Supp. 2d 690 (J.P.M.L. 2001) (all plaintiffs in separate actions jointly moved for centralization and sole defendant did not oppose); *In re H&R Block Mortg. Corp. Prescreening Litig.*, 435 F.Supp.2d 1347 (J.P.M.L. 2006) (national class pled under *federal statute* overlapped with state classes asserting violation of same federal statute). Intelius glosses over these material distinctions and argues that the only factor is overlapping questions of fact. It is not.

## B.     THE WESTERN DISTRICT OF WASHINGTON IS CONVENIENT FOR NO PARTY EXCEPT INTELIUS

Even if *Baxter* and *Kiethly* do share some factual overlap, transfer for coordinated or consolidated pretrial proceedings is not appropriate unless the convenience of parties and witnesses is served and the just and efficient conduct of the actions is promoted. 28 U.S.C. § 1407(a); *In re Photocopy Paper*, 305 F.Supp. 60 (J.P.M.L. 1969); MDL MANUAL, § 5:5 (2009).

Intelius' Transfer Motion glosses over the fact that the Western District of Washington is only convenient for Intelius.

The fact that Intelius employees are likely to be witnesses in this litigation should weigh little in the Panel's analysis. *See, Metz v. U.S. Life Ins. Co. in City of New York*, -- F.Supp.2d -- , 2009 WL 4840930, * 4 (C.D.Cal., Dec. 11, 2009) (in ruling on 1404(a) motion, "convenience of employees is less important than the convenience of non-party witnesses") citing *Catch Curve, Inc. v. Venali, Inc.*, 2006 WL 4568799, *3 (C.D. Ca. Feb. 26, 2007); *see also*, FED. R. CIV. P. 45(b)(2). Intelius has not demonstrated that other defendant parties such as adaptive or third party witnesses would find the Western District of Washington any more convenient than the Central District of California. Given that Adaptive is a defendant in *Baxter*, this factor actually weighs in favor of the Central District of California as the more convenient forum.

Intelius is the only party that resides in the Western District of Washington. Bruce Kiethly is purportedly "a resident of Washington State," though apparently not a resident of the Western District of Washington. *Kiethly* Compl. ¶ 7. Even if Mr. Kiethly did reside in the Western District of Washington, he cannot represent a class of persons enrolled in Adaptive programs as he was allegedly enrolled in an Intelius product. *Kiethly* Compl. ¶ 7. Further, the Western District of Washington is clearly not a convenient jurisdiction for *Kiethly* plaintiffs Lee / Cramer as they are Ohio residents. *Kiethly* Compl. ¶ 8.

Furthermore, a lead plaintiff has important responsibilities in managing class actions. To the extent that Denise Baxter or Evelyn Ackbarali are appointed lead plaintiff in *Baxter* or otherwise, transfer to the Western District of Washington would compromise these plaintiffs' ability to attend hearings. *See, Van Slyke v. Capital One Bank*, 503 F.Supp.2d 1353,

1363 (N.D.Cal.,2007) (transfer under 1404(a) denied in part because transfer would hinder ability of lead plaintiff to manage case).

Intelius' failure to demonstrate that the Western District of Washington is convenient to anyone other than Intelius is itself compelling justification to deny the Transfer Motion.

## C. TRANSFER WILL NOT PROMOTE JUST AND EFFICIENT CONDUCT THIS LITIGATION

Intelius argues that absent coordination or consolidation, "there is a possibility of inconsistent pretrial rulings on a range of issues, including (a) the scope and extent of discovery .... (b) class certification, and (c) motions to dismiss and motions for summary judgment." Transfer Motion at 11. These concerns are illusory. First, the scope of discovery will *necessarily* be different in *Baxter* and *Kiethly* given the vast differences in the two cases. Second, since *Baxter* and *Kiethly* seek certification of distinct classes under mutually exclusive state statutory regimes, this should not be an issue. Finally, California's Unfair Competition Law, False Advertising Law, and Consumers Legal Remedies Act have different pleading and proof standards than Washington's Consumer Protection Act. As such, rulings on motions to dismiss and/or summary judgment in these respective actionswill need to be independently determined under each state's law.[6]

Even though some documents relevant to this litigation may be located in the Western District of Washington, this fact should be given little weight, "given that advances in technology have made it easy for documents to be transferred to different locations." *Metz*, 2009 WL 4840930, *6 (C.D. Cal., Dec. 11, 2009) citing *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 778 (E.D. Tex. 2000) (holding that "the accessibility and location of sources of

---

[6] Intelius admits that the Western District of Washington's docket is equally congested as the SD CA. So no judicial efficiencies will be gained through the transfer and consolidation of these matters.

proof should weigh only slightly in this court's transfer analysis, particularly since these factors have been given decreasing emphasis due to advances in copying technology and information storage.") Furthermore, suitable alternatives to transfer exist that minimize potentially duplicative discovery and/or inconsistent pretrial rulings upon which Intelius relies as the basis for its Transfer Motion. *See, e.g., In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F.Supp. 242, 243-44 (J.P.M.L. 1978). Indeed, following the parties 26(f) conference in *Baxter*, efforts are already underway to ensure discovery is coordinated between these two actions.

Since the primary focus of the MDL procedure is promote judicial ecomony, Intelius' failure to demonstrate any efficiencies from transfer should deal a fatal blow to the Transfer Motion.

### D. *BAXTER* AND *KIETHLY* PLEAD DISTINCT CLASSES

Transfer and coordination is inappropriate where, as here, the cases plead separate classes. *In Re Hip & Knee Implant Marketing Litigation*, 572 F.Supp.2d 1379, 1380 (J.P.M.L. Aug. 19, 2008) (transfer denied where although multiple actions arose from similar factual background, the actions were brought on behalf of distinct and separate classes); *In re Tyson Foods, Inc., Meat Processing Facilities Fair Labor Standards Act (FSLA) Litig.*, 581 F.Supp.2d 1374, 1375 (J.P.M.L. 2008) (transfer denied where actions do not involve overlapping classes); *In re BMW Reverse Transmission Prods. Liab. Litig.*, 543 F.Supp.2d 1382 (J.P.M.L. 2008) (transfer denied where purported class actions had distinctly separate classes).

As stated above, *Baxter* and *Kiethly* have different: (1) criteria for class membership, (2) factual predicates for relief, and (3) class periods. *Cf., Baxter* FAC ¶ 52, *Kiethly* ¶ 23. Intelius is

thus incorrect in arguing that *Baxter* is "subsumed" by the putative national class pled in *Keithly*. Transfer Motion at 3.

And even though *Kiethly* pleads a putative national class, plaintiff Bruce Kiethly cannot represent *any* class of people who became enrolled in Adaptive programs because Mr. Kiethly was purchased the *Intelius* product "Identity Protect." *Kiethly* ¶ 7; *see* Restis Decl., Ex. A, ¶ 3. Similarly, the *Kiethly* complaint is unclear whether it was Lee or Cramer that became enrolled in the Family Protect program, at *what* intelius website Lee and/or Cramer "incurred charges for unordered services," or *which* of these purported joint plaintiffs' credit card was involved. *Kiethly* Compl. ¶ 8. If these Ohio plaintiffs purporting to represent class members with post-transaction marketing claims are found to lack standing, or are deemed unable to avail themselves of Washington law, *Keithly* and *Baxter* will no longer have any factual overlap whatsoever. *See*, WASH. REV. CODE §§ 19.86.020, 19.86.010(2) (the [WCPA] only applies to "the sale of assets or services, and any commerce directly or indirectly *affecting the people of the state of Washington*.") (emphasis added). For this reason, the Transfer Motion is at best premature, and the Panel should allow these two cases to proceed in tandem.

## E. MOTION TO TRANSFER UNDER 1404(a) HAS LITTLE POSSIBILITY OF SUCCESS

Tellingly, Intelius did not make a 28 U.S.C. § 1404(a) motion to transfer *Baxter* to the WD CA. This is likely because, the possibility of Intelius of obtaining transfer of *Baxter* is slim, and evidences why Intelius did not make such a motion. Much like the MDL statute, the burden is on Intelius to show that transfer is needed. *See Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 279 (9th Cir.1979); *see also Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986) ("defendant must make a strong showing ... to warrant

upsetting the plaintiff's choice of forum"); *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2009) (referring to the "strong presumption in favor of a domestic plaintiff's forum choice.") This presumption is even stronger where, as here, the plaintiff brings suit in her home forum. *Hagens Berman Sobol Shapiro LLP v. Rubinstein*, 2009 WL 3459741, * 4 (W.D.Wash. 2009) citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).

Similar to the Section 1407 analysis, the court considering a Section 1404(a) motion is instructed to consider: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. 28 U.S.C. § 1404(a); *Metz*, 2009 WL 4840930, * 2. As stated above, the Western District of Washington is not convenience of any party other than Intelius, and no more convenient for Adaptive or third party witnesses, and any discovery overlap is easily addressed by advances in electronic discovery. *See, Id.*, at * 4-6.

Plaintiff Baxter is a resident of the Central District of California, Southern Division, which has more intimate familiarity with the *Baxter* Plaintiffs claims under California law. *See, Decker Coal Co. v. Commonwealth Edison Co*. 805 F.2d 834, 843 (9th Cir. 1986) (relevant 1404(a) factors include "the local interest in having localized controversies decided at home," and "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action.") The *Baxter* Plaintiff's choice of forum is the Central District. Further, California has an interest in preventing fraudulent which have an effect on California residents. *See, Van Slyke v. Capital One Bank*, 503 F.Supp.2d 1353, 1363 (N.D.Cal.,2007) (noting California's interest in protecting its citizens, and that California plaintiff class weighs against transfer).

And the fact that *Baxter* was the first to file, weighs heavily against a transfer of *Baxter* to the WD CA. *See, Univera, Inc. v. Terhune,* 2009 WL 3711557, * 4(W.D. Wash., Nov. 3, 2009) (applying the "first to file" rule to decline transfer and protect plaintiffs' choice of forum).

## C. CONCLUSION

The above analysis demonstrates that judicial economy, which is the touchstone of 28 U.S.C. § 1407, is not furthered by granting Intelius Transfer Motion. Instead, Intelius is seeking to gain private litigation advantage unrelated to the purpose of 1407. For the reasons stated above, Intelius' Transfer Motion should be denied. However, if the Panel deems consolidation appropriate, the *Baxter* Plaintiffs pray that *Kiethly* be transferred to the Central District of California.

DATED: January 11, 2010

FINKELSTEIN & KRINSK LLP

By _____
William R. Restis

Jeffrey R. Krinsk
Mark L. Knutson
501 West Broadway, Suite 1250
San Diego, CA 92101-3593
Telephone: (619) 238-1333
Facsimile: (619) 238-5425
Email: wrr@classactionlaw.com

Counsel for Plaintiffs
Denise Baxter and Evelyn Ackbarali

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: INTELIUS, INC., POST-TRANSACTION MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 2140 |

## RESPONSE OF THE *BAXTER* PLAINTIFFS
## TO MOTION TO TRANSFER AND CONSOLIDATION

Pursuant to Rule 7.1(b) of the Rules of Procedure of the Judicial Panel on Multidistrict

Litigation, Plaintiffs and putative class representatives Denise Baxter and Evelyn Ackbarali (the

"*Baxter* Plaintiffs") in the matter of *Baxter v. Intelius, Inc.*, 8:09-cv-01031-AG-MLG (C.D. Cal.)

("*Baxter*") respectfully submit this Response to the Motion of Intelius Inc. for Transfer of

Actions to the Western District of Washington Pursuant to 28 U.S.C. § 1407 for Coordinated or

Consolidated Pretrial Proceedings (the "Transfer Motion"), and states as follows:

1.    Denied. *Baxter* seeks relief only for post-transaction marketing of negative option membership informational programs operated by Adaptive Marketing LLC on the intelius.com website. *Kiethly v. Intelius, Inc.*, 2:09-cv-01485-RSM (W.D. Wash.) ("*Kiethly*") seeks relief for pre-transaction and post-transaction marketing on www.intelius.com as well as any other website operated by Intelius. Furthermore, *Baxter* has joined defendant Adaptive Marketing LLC which is not a defendant in *Kiethly*. The *Baxter* Plaintiffs filed a First Amended Complaint ("FAC") in that

action on January 8, 2010 in response to defendants Intelius, Inc., Intelius Sales Company LLC (collectively "Intelius") and Adaptive Marketing LLC's ("Adaptive") joint motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) filed in the Central District of California on December 21, 2009.

2.    Denied. The *Baxter* FAC alleges that the method of presenting the post-transaction marketing of negative option programs on www.intelius.com is likely to deceive a ordinary user acting reasonably under the circumstances.

3.    Denied. The plaintiffs in *Kiethly* either do not have standing to represent a national class of post-transaction marketing victims (Bruce Kiethly) may not have used the Intelius.com website or otherwise have standing, or are not Washington residents that may not be able to avail themselves of Washington law.

4.    Denied. The *Baxter* class period is from August 26, 2005 to present. The *Kiethly* class period is from July 17, 2007 to present.

5.    Admitted.

6.    Denied. The *Baxter* Plaintiffs do not have knowledge of where the Intelius.com websites (and iterations thereof not at issue in *Baxter*) were developed and maintained.

7.    Denied. A significant amount of discovery in *Baxter* will be directed toward Adaptive Marketing LLC, which is located in Connecticut. Two of the three *Kiethly* plaintiffs are residents of the state of Ohio. The two plaintiffs in *Baxter*, as well as California class members are residents of the state of California. Only Intelius is a resident of the Western District of Washington.

8.    Denied. The *Baxter* Plaintiffs do not have knowledge of this averment.

9.

    (a)    Denied. *Baxter* does not allege that customers are automatically enrolled in Adaptive Programs. The *Baxter* FAC alleges that the method of presenting the post-transaction marketing of negative option programs on www.intelius.com is likely to deceive a ordinary user acting reasonably under the circumstances.

    (b)    Denied. *Kiethly* plaintiff Bruce Kiethly cannot represent *any* class of people who became enrolled in Adaptive programs because Mr. Kiethly was purchased the *Intelius* product "Identity Protect." Similarly, the *Kiethly* complaint is unclear whether it was Lee or Cramer that became enrolled in the Family Protect program, at *what* Intelius website Lee and/or Cramer "incurred charges for unordered services," or *which* of these purported joint plaintiffs' credit card was involved. To the extent these Ohio plaintiffs purporting to represent class members with post-

transaction marketing claims are found to lack standing (which is likely given the ambiguity of their allegations), or are deemed unable to avail themselves of Washington law, this allegation will not require resolution in *Kiethly*.

(c)     Denied. *Baxter* alleges that Intelius and Adaptive's post-transaction marketing page for programs offered by Adaptive has the possibility to deceive and mislead consumers into inadvertently enrolling in such programs. *Kiethly* alleges that consumers are enrolled without their consent. *Kiethly* plaintiff Bruce Kiethly cannot represent *any* class of people who became enrolled in Adaptive programs because Mr. Kiethly was purchased the *Intelius* product "Identity Protect." Similarly, the *Kiethly* complaint is unclear whether it was Lee or Cramer that became enrolled in the Family Protect program, at *what* Intelius website Lee and/or Cramer "incurred charges for unordered services," or *which* of these purported joint plaintiffs' credit card was involved. To the extent these Ohio plaintiffs purporting to represent class members with post-transaction marketing claims are found to lack standing (which is likely given the ambiguity of their allegations), or are deemed unable to avail themselves of Washington law, this allegation will not require resolution in *Kiethly*.

(d)     Denied. *Kiethly* plaintiff Bruce Kiethly cannot represent *any* class of people who became enrolled in Adaptive programs because Mr. Kiethly was purchased the *Intelius* product "Identity Protect." Similarly, the *Kiethly* complaint is unclear whether it was Lee or Cramer that became enrolled in the Family Protect program, at *what* Intelius website Lee and/or Cramer "incurred charges for unordered services," or *which* of these purported joint plaintiffs' credit card was involved. To the extent these Ohio plaintiffs purporting to represent class members with post-transaction marketing claims are found to lack standing (which is likely given the ambiguity of their allegations), or are deemed unable to avail themselves of Washington law, this allegation will not require resolution in *Kiethly*.

(e)     Denied. *Kiethly* plaintiff Bruce Kiethly cannot represent *any* class of people who became enrolled in Adaptive programs because Mr. Kiethly was purchased the *Intelius* product "Identity Protect." Similarly, the *Kiethly* complaint is unclear whether it was Lee or Cramer that became enrolled in the Family Protect program, at *what* Intelius website Lee and/or Cramer "incurred charges for unordered services," or *which* of these purported joint plaintiffs' credit card was involved. To the extent these Ohio plaintiffs purporting to represent class members with post-transaction marketing claims are found to lack standing (which is likely given the ambiguity of their allegations), or are deemed unable to avail

themselves of Washington law, this allegation will not require resolution in *Kiethly*.

(f)     Denied. *Kiethly* plaintiff Bruce Kiethly cannot represent *any* class of people who became enrolled in Adaptive programs because Mr. Kiethly was purchased the *Intelius* product "Identity Protect." Similarly, the *Kiethly* complaint is unclear whether it was Lee or Cramer that became enrolled in the Family Protect program, at *what* Intelius website Lee and/or Cramer "incurred charges for unordered services," or *which* of these purported joint plaintiffs' credit card was involved. To the extent these Ohio plaintiffs purporting to represent class members with post-transaction marketing claims are found to lack standing (which is likely given the ambiguity of their allegations), or are deemed unable to avail themselves of Washington law, this allegation will not require resolution in *Kiethly*.

(g)     Denied. *Kiethly* plaintiff Bruce Kiethly cannot represent *any* class of people who became enrolled in Adaptive programs because Mr. Kiethly was purchased the *Intelius* product "Identity Protect." Similarly, the *Kiethly* complaint is unclear whether it was Lee or Cramer that became enrolled in the Family Protect program, at *what* Intelius website Lee and/or Cramer "incurred charges for unordered services," or *which* of these purported joint plaintiffs' credit card was involved. To the extent these Ohio plaintiffs purporting to represent class members with post-transaction marketing claims are found to lack standing (which is likely given the ambiguity of their allegations), or are deemed unable to avail themselves of Washington law, this allegation will not require resolution in *Kiethly*.

(h)     Denied. *Kiethly* plaintiff Bruce Kiethly cannot represent *any* class of people who became enrolled in Adaptive programs because Mr. Kiethly was purchased the *Intelius* product "Identity Protect." Similarly, the *Kiethly* complaint is unclear whether it was Lee or Cramer that became enrolled in the Family Protect program, at *what* Intelius website Lee and/or Cramer "incurred charges for unordered services," or *which* of these purported joint plaintiffs' credit card was involved. To the extent these Ohio plaintiffs purporting to represent class members with post-transaction marketing claims are found to lack standing (which is likely given the ambiguity of their allegations), or are deemed unable to avail themselves of Washington law, this allegation will not require resolution in *Kiethly*.

(i)     Denied. *Kiethly* plaintiff Bruce Kiethly cannot represent *any* class of people who became enrolled in Adaptive programs because Mr. Kiethly was purchased the *Intelius* product "Identity Protect." Similarly, the *Kiethly* complaint is unclear whether it was Lee or Cramer that became

enrolled in the Family Protect program, at *what* Intelius website Lee and/or Cramer "incurred charges for unordered services," or *which* of these purported joint plaintiffs' credit card was involved. To the extent these Ohio plaintiffs purporting to represent class members with post-transaction marketing claims are found to lack standing (which is likely given the ambiguity of their allegations), or are deemed unable to avail themselves of Washington law, this allegation will not require resolution in *Kiethly*.

(j)    Denied. *Kiethly* plaintiff Bruce Kiethly cannot represent *any* class of people who became enrolled in Adaptive programs because Mr. Kiethly was purchased the *Intelius* product "Identity Protect." Similarly, the *Kiethly* complaint is unclear whether it was Lee or Cramer that became enrolled in the Family Protect program, at *what* Intelius website Lee and/or Cramer "incurred charges for unordered services," or *which* of these purported joint plaintiffs' credit card was involved. To the extent these Ohio plaintiffs purporting to represent class members with post-transaction marketing claims are found to lack standing (which is likely given the ambiguity of their allegations), or are deemed unable to avail themselves of Washington law, this allegation will not require resolution in *Kiethly*.

(k)    Denied. *Kiethly* plaintiff Bruce Kiethly cannot represent *any* class of people who became enrolled in Adaptive programs because Mr. Kiethly was purchased the *Intelius* product "Identity Protect." Thus, whether statements by Intelius relating to this product are misleading are not at issue in *Baxter*. Similarly, the *Kiethly* complaint is unclear whether it was Lee or Cramer that became enrolled in the Family Protect program, at *what* Intelius website Lee and/or Cramer "incurred charges for unordered services," or *which* of these purported joint plaintiffs' credit card was involved. To the extent these Ohio plaintiffs purporting to represent class members with post-transaction marketing claims are found to lack standing (which is likely given the ambiguity of their allegations), or are deemed unable to avail themselves of Washington law, this allegation will not require resolution in *Kiethly*.

(l)    Denied. *Kiethly* plaintiff Bruce Kiethly cannot represent *any* class of people who became enrolled in Adaptive programs because Mr. Kiethly was purchased the *Intelius* product "Identity Protect." Thus, whether statements by Intelius relating to this product are misleading are not at issue in *Baxter*. Similarly, the *Kiethly* complaint is unclear whether it was Lee or Cramer that became enrolled in the Family Protect program, at *what* Intelius website Lee and/or Cramer "incurred charges for unordered services," or *which* of these purported joint plaintiffs' credit card was involved. To the extent these Ohio plaintiffs purporting to represent class members with post-transaction marketing claims are found to lack

standing (which is likely given the ambiguity of their allegations), or are deemed unable to avail themselves of Washington law, this allegation will not require resolution in *Kiethly*.

10.     Admitted in part. There are only two federal actions pending nationwide. Intelius' concerns regarding inconsistent pretrial rulings are illusory. First, the scope of discovery will *necessarily* be different in *Baxter* and *Kiethly* given the different defendants, website, and advertising practices at issue in the two cases. Second, since *Baxter* and *Kiethly* seek certification of distinct classes under mutually exclusive state statutory regimes, this should not be an issue. Finally, California's Unfair Competition Law, False Advertising Law, and Consumers Legal Remedies Act have different pleading and proof standards than Washington's Consumer Protection Act. As such, rulings on motions to dismiss and/or summary judgment in these respective actions will need to be independently determined under each state's law.

11.     Denied. There are only two federal actions pending nationwide. Intelius has not demonstrated that other defendant parties such as adaptive or third party witnesses would find the Western District of Washington any more convenient than the Central District of California. Given that Adaptive is a defendant in *Baxter*, this factor actually weighs in favor of the Central District of California as the more convenient forum. Intelius is the only party that resides in the Western District of Washington. Bruce Kiethly is purportedly "a resident of Washington State," though apparently not a resident of the Western District of Washington. Even if Mr. Kiethly did reside in the Western District of Washington, he cannot represent a class of persons enrolled in Adaptive programs as he was allegedly enrolled in an Intelius product. Further, the Western District of Washington is clearly not a convenient jurisdiction for *Kiethly* plaintiffs Lee / Cramer as they are Ohio residents. The Western District of Washington is not convenient to the named Plaintiffs in *Baxter*, and to the extent they are re appointed lead plaintiff in *Baxter* or otherwise, transfer to the Western District of Washington would compromise these plaintiffs' ability to attend hearings. Plaintiffs' counsel in *Baxter* and for Adaptive are in the Central District of California. Given the divergent facts and law, divergent pretrial rulings regarding the scope of discovery, class certification, motions to dismiss, and summary judgment may occur regardless of transfer.

12.     Denied. The *Baxter* Defendants jointly filed a Rule 12(b)(6) motion to dismiss and to strike class allegations on December 21, 2009. By Stipulated Order, Intelius was required to file its response to the *Kiethly* complaint by December 8, 2010. On January 6, 2010, Intelius filed a Stipulated Order extending its time to respond to the *Kiethly* complaint until January 11, 2010, which prevents any party from bringing the contents of Intelius' response in *Kiethly* to this Panel's attention.

13.     Admitted.

14. Admitted.

15. Admitted.

16. Denied. No other federal action other case to have been filed in the four and one half months since the commencement of *Baxter*. There are only two cases pending nationwide.

DATED: January 11, 2010

FINKELSTEIN & KRINSK LLP

By _____
William R. Restis

Jeffrey R. Krinsk
Mark L. Knutson
501 West Broadway, Suite 1250
San Diego, CA 92101-3593
Telephone: (619) 238-1333
Facsimile: (619) 238-5425
Email: wrr@classactionlaw.com

Counsel for Plaintiffs
Denise Baxter and Evelyn Ackbarali

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN 1 2 2010

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

IN RE: INTELIUS, INC., POST-
TRANSACTION MARKETING AND
SALES PRACTICES LITIGATION

MDL Docket No. 2140

## DECLARATION OF WILLIAM R. RESTIS IN SUPPORT OF OPPOSITION OF
## *BAXTER* PLAINTIFFS TO MOTION TO TRANSFER AND CONSOLIDATION

I, William R. Restis, Esq., declare as follows:

1.     I am an attorney at law duly licensed to practice before all the Courts of the State

of California and the United States District Court for the Southern District of California.  I am

an associate in the law firm of Finkelstein & Krinsk LLP, counsel for plaintiffs Denise Baxter

and Evelyn Ackbarali ("Plaintiffs") in the matter of *Baxter v. Intelius, Inc.*, 8:09-cv-01031-AG-

MLG (C.D. Cal.) ("*Baxter*").  I have personal knowledge of the facts set forth herein and if

called as a witness, could and would testify competently thereto. I am making this Declaration

in support of Plaintiffs' Opposition to the Motion of Intelius Inc. for Transfer of Actions to the

Western District of Washington Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated

Pretrial Proceedings (the "Transfer Motion").

DECLARATION OF WILLIAM R. RESTIS IN SUPPORT OF OPPOSITION OF *BAXTER* PLAINTIFFS TO
MOTION TO TRANSFER AND CONSOLIDATION
MDL No. 2140

- 1 -

2.     Attached hereto as Exhibit "A" is a true and correct copy of the Declaration of Ron Thunen III in Support of Request for Judicial Notice in Support of Motion to Dismiss/Strike Plaintiff the *Baxter* complaint, filed in the Central District of California on December 21, 2009.

3.     Attached hereto as Exhibit "B" is a true and correct copy of the First Amended complaint in *Baxter* filed in the Central District of California on January 8, 2010.

4.     On January 11, 2010, Plaintiffs in *Baxter* filed a motion for class certification on behalf of a California class under California's: (1) Unfair Competition law, CAL. BUS. & PROF. CODE §§ 17200, *et seq.* (the "UCL"), (2) False Advertising Law, CAL. BUS. & PROF. CODE §§ 17200, *et seq* ("FAL") and Consumers Legal Remedies Act, CAL. CIV. CODE § 1770, et seq. (the "CLRA").

5.     I declare under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED: January 11, 2010                    FINKELSTEIN & KRINSK LLP

                                           By
                                              William R. Restis

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN 1 2 2010

FILED
CLERK'S OFFICE

# EXHIBIT A

RECEIVED
CLERK'S OFFICE

2010 JAN 12 A 10: 0 4

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

1   DARREL J. HIEBER (SBN 100857)
    darrel.hieber@skadden.com
2   ROBERT J. HERRINGTON (SBN 234417)
    robert.herrington@skadden.com
3   SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP
4   300 South Grand Avenue
    Los Angeles, California 90071-3144
5   Telephone: (213) 687-5000
    Facsimile:  (213) 687-5600
6
    Attorneys for Defendant
7   ADAPTIVE MARKETING LLC

8   Richard J. Grabowski (State Bar No. 125666)
    rgrabowski@jonesday.com
9   John A. Vogt (State Bar No. 198677)
    jvogt@jonesday.com
10  Edward S. Chang (State Bar No. 241682)
    echang@jonesday.com
11  JONES DAY
    3161 Michelson Drive Suite 800
12  Irvine, CA 92612
    Telephone: (949) 851-3939
13  Facsimile:  (949) 553-7539

14  Attorneys for Defendants
    INTELIUS INC. & INTELIUS SALES LLC
15

16              UNITED STATES DISTRICT COURT

17              CENTRAL DISTRICT OF CALIFORNIA

18

19  DENISE BAXTER, Individually And        Case No. SA CV-09-01031-AG-
    On Behalf Of All Other Similarly       (MLGx)
20  Situated California Residents,
                                           Assigned for all purposes to
21              Plaintiff,                  Hon. Andrew J. Guilford

22      v.                                 DECLARATION OF RON
                                           THUNEN III IN SUPPORT OF
23  INTELIUS INC., A Delaware              REQUEST FOR JUDICIAL
    Corporation; INTELIUS SALES            NOTICE IN SUPPORT OF
24  COMPANY LLC, a/k/a INTELIUS            MOTION TO DISMISS/STRIKE
    SALES, LLC, A Nevada Limited
25  Liability Company and ADAPTIVE         Date: February 22, 2010
    MARKETING LLC, A Delaware              Time: 10:00 a.m.
26  Limited Liability Company,             Courtroom: 10-D

27              Defendant.                 Action Filed:   August 26, 2009
                                           Trial Date:  Not Yet Set
28

    IRI-1695v1                             DECLARATION OF RON THUNEN, III

1    I, Ron Thunen, III, say and declare as follows:

2    1.    I am Director of Program Management of the Consumer Business Unit

3    of Intelius Inc. ("Intelius"). Prior to being appointed Director of Program

4    Management, I was a lead program manager. I make this Declaration in Support of

5    Defendants' Request for Judicial Notice in Support of Defendants' Motion to

6    Dismiss/Strike. I have personal knowledge of the facts set forth below and, if

7    called upon to do so, I would and could testify competently thereto.

8    2.    Attached hereto as Exhibit A is a true and correct copy of the

9    enrollment form's disclosures as they were displayed to Plaintiff after her Intelius

10   purchase that enabled Plaintiff to consent to enroll in Adaptive Marketing LLC's

11   ValueMax membership program.

12   3.    Attached hereto as Exhibit B are true and correct copies of the

13   enrollment forms' disclosures as they were displayed to Plaintiff prior to her

14   Intelius purchase that enabled Plaintiff to consent to enroll in Intelius Inc.'s

15   Indentity Protect membership program.

16   4.    The Identity Protect membership to which Plaintiff enrolled is an

17   Intelius program, and was not a membership offered by, maintained or in any way

18   affiliated with Adaptive or Adaptive's ValueMax program.

19   I declare under penalty of perjury under the laws of the United States that the

20   matters set forth above are true and that I executed this Declaration on December

21   17, 2009 in BELLEVUE, WA.

22

23

24                                                    Ron Thunen III

25

26

27

28

# EXHIBIT A

# Thank You your order has been successfully completed

## Get $10.00 CASH BACK as a member of ValueMax℠

ADVERTISEMENT



by ValueMax

Register below to claim your $10 Cash Back as a member of ValueMax. (Click here for Details).

**ValueMax Includes:**

- Savings on travel needs.
- 20% Savings on Gift Cards for Retailers and Restaurants.
- 5% to 60% savings on prescription drugs.
- 20% to 60% savings on lenses, frames and contacts.

### Please type in your email address below



By typing your e-mail address below, that will constitute your electronic signature and is your written authorization to charge/debit your account according to the Offer Details to the right.

This is a secured web page!

E-Mail Address:

Confirm E-Mail Address:

By clicking "Yes" I have read and agree to the Offer Details displayed to the right, and authorize Intelius to securely transfer my name, address, and credit/debit card information to ValueMax.

**YES**
And show my report

Click once and wait

No, show my report

### ValueMax Benefit Details:

ValueMax is one of the America's premier discount shopping services that offers big savings at leading retail stores, restaurants, and movie theaters throughout the nation.

- Savings on travel needs. Save up to 50% at Hyatt, Hilton, Sheraton, Best Western and more — and up to 30% on car rentals at Alamo, Budget, Hertz and others.
- 20% savings on gift cards* purchased through ValueMax for leading retailers such as Red Bath &
  Beyond, Kmart, Jillian Vernon®, Linens n Things, and Staples — for a savings of over $1,000 per year.
- 20% savings on gift cards* purchased through ValueMax for popular family restaurants, including
  Bennigan's®, Hard Rock Cafe®, Red Lobster®, Olive Gardens®, Outback Steakhouse® and more —
  for a savings of over $1,200 per year.
- 5% to 60% savings on prescription drugs at over 45,000 pharmacies nationwide.
- 20% discounted eye exams and eyewear on frames and contacts at 12,000 providers nationwide and 10% to
  30% on yoga, personal trainers and massage therapists through our Alternative Care network.

Click here for Benefit Details

### Offer Details:

Please check if you are using a Debit Card. Simply type in your email address and click "Yes" to activate your Intelius membership, and take advantage of the great savings that ValueMax has to offer plus claim your $10.00 Cash Back. The membership fee of $19.95 per month will be charged/debited by ValueMax on the credit/debit card you used today with Intelius after your 7-day FREE trial period and then automatically charged/debited each month at the then current membership fee so long as you remain a member of the program, or until you call the 1-888-205-2287 within the first 7 days to cancel, and you will not be charged/debited. Please note that by agreeing to these Offer Details you are authorizing Intelius to securely transfer your name, address, and credit/debit card information to ValueMax. No matter what the FREE 10-day Cash Back is yours to claim. Remember if for any reason you are dissatisfied you are not obligated to remain a member and your charge will be charged/debited. If you used a debit card today, then beginning on or about 7 days from now, your monthly membership fee for ValueMax will be automatically debited each month on or about the same date from the checking account associated with that card.

### Disclaimers:

*Participating vendors are neither sponsors, co-sponsors nor affiliates of ValueMax. Gift card/certificate savings are an exclusive offer of ValueMax and are valid only on gift cards/certificates purchased through ValueMax. Please see back of gift card/certificate for terms and conditions of use. Trademarks and copyrights remain the property of the individual vendor. ValueMax uses vendor names, logos and any other vendor material by permission of each vendor. Please visit the ValueMax website (www.valuemax123.com) or call Member Savings (1-888-205-2287) for complete terms and conditions related to participating vendors.

Privacy Policy | Terms and Conditions

© Copyright 2009 ValueMax - All Rights Reserved

# EXHIBIT B



**INTELIUS**
Live in the know.™

<< Return to Home

## Reverse Email Address Report with Identity Protect Trial

### Reverse Email Address Report

Includes all 1 Email Lookup Records for tmaseeh@earthlink.net

- Name: Available    ■ Address: Available
- City / State: Available

**EMAIL LOOKUP REPORT ALSO INCLUDES: (WHEN AVAILABLE)**

- Associated Personal or Business Names
- Residential, Business, Cell Phone, or Other Phone Types
- Postal Address & Location Details

### Identity Protect Benefits

**Identity Protect Includes:**
- Monthly Credit Reports    ■ $25,000 Identity Theft Insurance
- 24/7 Recovery Services    ■ 10% Off All Intelius Purchases
- Credit Monitoring          ■ Public Records Monitoring
- Email Alerts               ■ Real Time ID Theft Risk Score
- Internet Scanning          ■ Much More

**Offer Details:**
Click "Continue" button to accept this special offer price and activate your trial membership to take advantage of the great benefits that Identity Protect has to offer. The membership fee of $19.95 per month will be charged/debited by Intelius.com to the credit/debit card you use today with Intelius.com after the 7-day trial. Special Offer only available to Non Identity Protect Customer.

Additional Offer & Benefit Details | Terms & Conditions | Privacy Policy

  

60% off

$1.95

**Continue**

**Remove**
**Identity Protect**
Pay Regular Price of 4.95

### Order Summary

1. Reverse Email Address Report  **$1.95**
   *Identity Protect Discount You saved $3.00.*
2. Identity Protect Trial  **$0.00**
   Total Charge  **$1.95**
   Your Savings: $3.00

After your 7 day free trial, if you do not cancel your identity Protect membership your credit card will be billed $19.95 and each month thereafter that you continue your membership. You may cancel anytime.

We are committed to protecting the information you provide. Intelius is both Verisign Security Certified and McAfee Secure Certified.






Exhibit B
Page 4

**INTELIUS**
Live in the know.

Sign In – My Intelius
Help: (888) 445-2727 | View My Reports

**<< Return to Home**

| Select Add-Ons | | |
|---|---|---|
| Add ☐ | **Premium Confirmation Service with Report in PDF**<br>▪ Automatically **Confirm** all Phone Connections & Current Addresses in this **Email Report** against **public utilities against public utilities**.<br>▪ **Save** a copy of your phone report in **PDF** | **$4.95** |
| Add ☐ | Club Intelius - Get **10%** Off on ALL purchases for **1** year including THIS transaction. | **$9.95** |

**Continue**

**Order Summary**

| | | |
|---|---|---|
| 1. | Reverse Email Address Report<br>*Identity Protect Discount. You saved $3.00* | $1.95 |
| 2. | Identity Protect Trial | $0.00 |
| | **Total Charge** | **$1.95** |
| | **Your Savings** | **3.00** |

VeriSign Secured VERIFY
McAfee SECURE TESTED 08-SEPT
SECURE TRANSACTIONS

Bookmark Intelius | Help | About | Careers | Privacy | Contact Us | FAQ | Terms & Conditions | Site Map | Affiliates | Directory | Volume Discounts

© 2003-2009 Intelius, Inc.

VeriSign SECURITY CERTIFIED · Inc. 500 · iapp corporate member · McAfee SECURE TESTED 08-SEPT

![INTELIUS Live in the know.]

<< Return to Home

# Create Your Account
To create your intelius account, please complete the form below.

## Account Information

**Email Address**
Example: jsmith@hotmail.com

**Password**
Must be at least 6 characters

**Confirm Password**
Type password again to verify

**Subscribe to newsletter**
☐ Please send me the exclusive discounts, coupons and updates via the Intelius e-newsletter

## Payment Information

**Payment Type**
Credit Card

**Credit Card Number**
[VISA] [MasterCard] [Discover] [AmEx]  No spaces or punctuation

**Credit Card Expiration**
Month ▾  Year ▾

**Card Security Code (CCV)**
What is this?

**Cardholder Name**
First and last name as shown on card

## Credit Card Billing Address

**Billing Country**
United States

**Street Address**
Example: 1234 First Ave.

**City / State**
Example: Bellevue          Select a State ▾

**Zip / Postal Code**
Example: 98004

**Phone Number**
Example: 555-555-5555 (Optional)

**Your credit card statement will reflect a charge from Intelius for $1.95 for this purchase.**

[ Confirm the Purchase and Show My Report ]

By clicking the Confirm Purchase button above I accept the Intelius Terms and Conditions.

# Members Login

Email Address

Password

[ Login ]

## Order Summary

1  Reverse Email Address Report                    $1.95
   Identity Protect Discount: You Saved
   $3.00

2  Identity Protect Trial                          $0.00

   **Total Charge $1.95**
   **Your Club Savings $3.00**

VeriSign Secured

McAfee SECURE  testsite-safe

SECURE TRANSACTIONS

FAQ | Terms & Conditions
© 2003-2009 Intelius, Inc.

Inc. 500

VeriSign SECURITY CERTIFIED

McAfee SECURE  testsite-safe

iapp



Exhibit B
Page 6

# EXHIBIT B

Name & Address:

William R. Restis
Finkelstein & Krinsk
501 West Broadway, Ste. 1250
San Diego, CA 92101

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE BAXTER, and EVELYN<br>ACKBARALI, individually and on<br>behalf of all other similarly<br>situated California PLAINTIFF(S)<br>Residents v. | CASE NUMBER<br><br>8:09-cv-01031-AG MLG |
| INTELIUS, INC., A Delaware<br>Corporation; INTELIUS SALES<br>COMPANY LLC, a/k/a INTELIUS SALES,<br>LLC A Nevada Limited Liability DEFENDANT(S).<br>Company; and ADAPTIVE MARKETING LLC<br>A Delaware Limited Liability Company, | AMENDED: SUMMONS |

TO:  DEFENDANT(S): INTELIUS, INC., INTELIUS SALES COMPANY LLC, a/k/a

INTELIUS SALES, LLC, and ADAPTIVE MARKETING LLC

A lawsuit has been filed against you.

Within  21  days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☐ complaint ☒ First _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, William R. Restis _____, whose address is    501 West Broadway, Ste. 1250, San Diego, CA 92101 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:  JAN - 8 2010

By: _____
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                    SUMMONS

Name & Address:

William R. Restis
Finkelstein & Krinsk
501 West Broadway, Ste. 1250
San Diego, CA 92101

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE BAXTER, and EVELYN ACKBARALI, individually and on behalf of all other similarly situated California Residents PLAINTIFF(S) v. | CASE NUMBER<br>8:09-cv-01031-AG MLG |
| INTELIUS, INC., A Delaware Corporation; INTELIUS SALES COMPANY LLC, a/k/a INTELIUS SALES, LLC A Nevada Limited Liability Company; and ADAPTIVE MARKETING LLC A Delaware Limited Liability Company, DEFENDANT(S). | AMENDED: SUMMONS |

TO:   DEFENDANT(S): INTELIUS, INC., INTELIUS SALES COMPANY LLC, a/k/a
       INTELIUS SALES, LLC, and ADAPTIVE MARKETING LLC

A lawsuit has been filed against you.

Within _ 21 _ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☐ complaint ☒ First _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, William R. Restis _____, whose address is
_____ 501 West Broadway, Ste. 1250, San Diego, CA 92101 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:   JAN - 8 2010

By: _____
            NANCY CASTRO
            Deputy Clerk

(Seal of the Court)     1144

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                          SUMMONS

Jeffrey R. Krinsk (CA Bar No. 109234)
jrk@classactionlaw.com
Mark L. Knutson (CA Bar No. 131770)
mlk@classactionlaw.com
William R. Restis (CA Bar No. 246823)
wrr@classactionlaw.com
FINKELSTEIN & KRINSK LLP
501 West Broadway, Suite 1250
San Diego, California 9210-3579
Telephone: (619) 238-1333
Facsimile: (619) 238-5425

Attorneys for Plaintiffs
Denise Baxter and Evelyn Ackbarali

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DENISE BAXTER, and EVELYN ACKBARALI, individually and on behalf of all other similarly situated California Residents<br><br>Plaintiffs,<br><br>v.<br><br>INTELIUS, INC., A Delaware Corporation; INTELIUS SALES COMPANY LLC, a/k/a INTELIUS SALES, LLC A Nevada Limited Liability Company; and ADAPTIVE MARKETING LLC, A Delaware Limited Liability Company,<br><br>Defendants. | Case No. 8:09-cv-01031-AG-MLG<br><br>FIRST AMENDED CLASS ACTION COMPLAINT FOR:<br><br>(1) UNFAIR AND DECEPTIVE BUSINESS PRACTICES IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *ET SEQ*.;<br>(2) FALSE ADVERTISING IN VIOLATION OF CAL. BUS. & PROF. CODE § 17500, *ET SEQ*.;<br>(3) VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1770;<br><br>**JURY TRIAL DEMANDED** |

FIRST AMENDED CLASS ACTION COMPLAINT

1    Plaintiffs Denise Baxter and Evelyn Ackbarali ("Plaintiffs") allege the following based
2  upon the investigation of counsel, which included, *inter alia*, interviews with former employees, as
3  well as a review of United States Securities and Exchange Commission ("SEC") filings, other
4  regulatory filings, reports, and advisories, press releases, and media reports about defendants
5  Intelius, Inc. and Intelius Sales Company LLC, (collectively "Intelius" or the "Intelius
6  Defendants"), and Adaptive Marketing, LLC ("Adaptive") collectively (the "Defendants").

7  **I.    JURISDICTION AND VENUE**

8    1.    This Court has jurisdiction over the subject matter of this action pursuant to the
9  Class Action Fairness Act, 28 U.S.C. §§1332(d), 1446, and 1453(b). Plaintiffs further allege upon
10 information and belief that the cumulative amount in controversy for Plaintiffs and the class exceed
11 $5 million. Venue is proper in this district pursuant to 28 U.S.C. §1391(a) and (c) because many of
12 the acts and transactions giving rise to the violations of law complained of herein occurred in this
13 district and because Defendants:

14      (a)    conduct business themselves or through an agent(s) in this district; and/or

15      (b)    are licenced or registered in this district.

16 **II.   NATURE OF ACTION**

17    2.    This class action complaint seeks to remedy Defendants' use of deceptive and
18 misleading post-transaction "negative option upsell" materials and advertisements on the
19 **www.Intelius.com** website to cause Plaintiffs and the Class to become enrolled in automatically
20 recurring monthly "memberships" operated by Intelius and its co-venturer, Adaptive (collectively
21 the "Negative Option Programs" or "Programs").[1]  Defendants' utilize a host of highly misleading,
22 confusing, and unlawful practices that are likely to deceive users of the Intelius.com website, and
23 fail to comply with, *inter alia*, the requirements of California's Consumers Legal Remedies Act
24 ("CLRA").

25    3.    When consumers arrive at the Intelius.com website, they are presented with the
26 option to purchase consumer information such as search and monitoring services that help the

27

28 _____
   [1] An identification of the principal Negative Option Programs is set forth in ¶ 27, below.
   FIRST AMENDED CLASS ACTION COMPLAINT                                    - 1 -
   *No. 8:09-cv-01031-AG-MLG*

1  consumer find information about people, businesses and assets. The informational products
2  offered at Intelius.com include "background check," "reverse phone lookup," "people search,"
3  "email search,"* "social net search," and similar rudimentary information (the "Requested
4  Information.")

5  4.      Defendants' post transaction marketing of the Negative Option Programs occurs
6  *after* an Intelius.com customer follows the web page instructions, inputs his billing and contact
7  information and clicks on a button that says "Complete the Purchase and Show My Report."
8  However, having done so, the customer is not shown their Report. Instead, Intelius' website
9  directs the consumer to an "interstitial page" presenting a Negative Option Program offer and
10 containing a large red button exclaiming, "YES, And show my report." Due to the webpage's
11 design, the only apparent means *visually* observable by a consumer viewing the interstitial page as
12 loaded by Defendants to avoid enrollment in the Program as a condition prerequisite to the
13 consumer obtaining the purchased Intelius Report, is to physically scroll-down past an artificial
14 "page break" imbedded onto the webpage by Defendants. Only once this is done is the consumer
15 presented a small grey button saying "No, show my report" thereby enabling the consumer to
16 access to the Requested Information Report that was purchased on the *prior* web page without also
17 having to acquire a Negative Option Program.

18 5.      Defendants' manipulative secquencing of the internet transaction and the design
19 of the interstitial page appearing during the course of consumers' purchases of Intelius products
20 was not created by accident. Rather, it was prepared with the assistance of a bevy of psychologists
21 and behavioral marketing specialists and intentionally designed in a manner to cause Plaintiffs and
22 other members of the Class to blindly "enroll" in the Negative Option Program(s).

23 6.      Defendants utilize tactics new to e-commerce, but recognized to be deceptive
24 and abusive in other commercial contexts, especially direct mail and telemarketing. First,
25 Defendants use what is known by the Federal Trade Commission ("FTC") as "preacquired account
26 information." That is, instead of requiring the consumer to enter billing (*i.e.*, credit / debit card)
27 information on the interstitial page to indicate acceptance of the post-transaction purported "offer"
28 for a Negative Option Program, Defendants process the credit/debit card and billing information

1   automatically once the consumer enters their email address and clicks a large red button that says
2   "YES, And show my report." This deprives consumers of notice that they are entering a new
3   financial relationship with recurring monthly charges.

4   7.      Defendants also market the Negative Option Programs on a "free-to-pay"
5   conversion. This means that if consumers enter their email address and click the large red button,
6   they are automatically enrolled in a seven-day trial for a particular Negative Option Program. If
7   consumers do not take affirmative action to cancel the Negative Option Program(s) before the end
8   of the 7-day trial period, Defendants charge the credit/debit card used to pay for the Requested
9   Information on a recurring monthly basis.

10  8.      According to the FTC's Telemarketing Sales Rule, the use of "preacquired
11  account information" in conjunction with "free-to-pay" conversion memberships are "abusive
12  conduct" in the telemarketing context. According to the Telemarketing Sales Rule:

13         The record makes clear, in fact, that it is the very act of pulling out a wallet and
           providing an account number that consumers generally equate with consenting to
14         make a purchase, and that this is the most reliable means of ensuring that a
           consumer has indeed consented to a transaction. ... [T]he Commission still
15         believes that whenever preacquired account information enables a seller or
           telemarketer to cause charges to be billed to a consumer's account without the
16         necessity of persuading the consumer to demonstrate his or her consent by
           divulging his or her account number, the customary dynamic of offer and
17         acceptance is inverted.[2]

18

19  9.      The FTC concluded that, "in any transaction involving both preacquired account
20  information and a 'free to pay conversion,' the evidence of abuse is so clear and abundant that
21  comprehensive requirements for obtaining express informed consent in such transactions are
22  warranted."[3]  In such a situation, the FTC requires marketers to have the customer re-enter, at a
23  minimum, the last four digits of their credit/debit card number, and to "obtain from the customer
24  his or her express agreement to be charged for the [Negative Option Programs] and to be charged
25  using the account number" entered a second time. 16 C.F.R. § 310.4(a)(6)(i). Defendants do
26  neither.

27  ---
    [2] *Telemarketing Sales Rule*, 68 Fed. Reg. 4580, 4619 (Jan. 29, 2009) (final amended rule).
28  [3] *Id.*, at 4621.

1      10.      According to documents produced by Defendants to the Senate Committee on

2 Commerce, Science and Transportation as part of an ongoing investigation (*see, infra* § IV.A),

3 Defendants are aware that requiring consumers to re-enter their account information or otherwise

4 clearly and unambiguously consent to enrollment in the Negative Option Programs drastically

5 reduces the rate of enrollment and that an overwhelming number of Intelius.com consumers who

6 enroll in the Negative Option Programs do not intend to do so.[4]

7      11.      Defendants' incentive to dupe consumers is acute. For Intelius, its relationship

8 with Adaptive has no associated costs. Intelius receives a "bounty fee" for promoting the Negative

9 Option Programs on the intelius.com website. Thus, the revenue Intelius "earns" from the Negative

10 Option Programs is 100% profit.

11      12.      The harmful nature of Defendants' business practices have not avoided notice.

12 As of March 2009, the Washington State Attorney General (Intelius' principal executive offices are

13 in Washington) had received over 120 consumer complaints against Intelius for the conduct alleged

14 herein. In addition, the Better Business Bureau ("BBB") has received over 800 complaints and 157

15 "serious complaints" against Defendants, assigning each of them an "F" rating (an "F" rating

16 represents the lowest "degree of confidence that the business is operating in a trustworthy manner

17 and will make a good faith effort to resolve any customer concerns").

18      13.      An Internet search of the words "Intelius" and/or "scam"/"fraud" reveals

19 thousands of complaints against Intelius.com for the practices complained of herein.

20 **III.     PARTIES**

21      14.      Plaintiff Denise Baxter ("Baxter") is, and at all relevant time was, a resident of

22 Capistrano Beach, California. On or about May 4, 2009, Plaintiff Baxter accessed the

23 "Intelius.com" website for a "person search," *i.e.*, a search for the address and contact information

24 of a person. Baxter paid $14.95 in advance for the one-time person "premium" search as required

25 by Intelius.com, using her USAA Savings Bank-issued Master Card and, in so doing, had to

26      [4] Senate Committee on Commerce, Science and Transportation, Office of Oversignt and

27 Investigations Staff Report for Chairman Rockefeller: *Aggressive Sales Tactics on the Internet and Their Impact on American Consumers* (Nov. 16, 2009), available at:

28 http://commerce.senate.gov/public/_files/111609STAFFREPORT.pdf

1    provide Intelius with her confidential credit card account information in order to conduct the
2    "person search" on Intelius' website. Plaintiff Baxter was tricked by the deceptive nature of
3    Defendants' presentation of the interstitial page for the Negative Option Programs, and became
4    enrolled in Adaptive's "ValueMax" Negative Option Program for which she did not intend to
5    enroll. As a direct and proximate result of the deceptive nature of Defendants' post-transaction
6    marketing of the Negative Option Programs, Plaintiff Baxter did not understand that she had been
7    enrolled in the Negative Option Programs or would be charged for such. But-for Defendants'
8    deceptive and misleading post-transaction marketing of the Negative Option Programs on the
9    www.intelius.com website, Plaintiff Baxter would not have clicked the large confirmation button
10   enrolling her into the ValueMax Negative Option Program.

11        15.    The credit card information Plaintiff Baxter previously provided to Intelius to
12   purchase the "people search" service referenced above was then charged for, at least, the following
13   unrequested Negative Option Programs: a 5/12/09 charge from "VALUEMAX" for $19.95, and a
14   6/11/09 charge from "VALMAX" for $19.95. Plaintiff Baxter was also assessed and paid interest
15   on these improper charges by Defendants. None of the charges to Baxter's credit card were made
16   with her knowledge, authorization or consent. Further, the misleading and deceptive nature of the
17   Intelius.com website and Intelius' lack of clear and adequate disclosures concerning the Negative
18   Option Programs as described herein, caused Plaintiff Baxter and the Class to incur and pay the
19   charges for such Negative Option Programs as they were charged to their credit, debit or charge
20   cards.

21        16.    Plaintiff Evelyn McDonnell Ackbarali ("Ackbarali") is, and at all relevant times
22   was, a resident of Cathedral City, California. On or about April 10, 2008, Plaintiff Ackbarali
23   accessed the "Intelius.com" website for a "person search." Ackbarali paid $2.95 in advance for the
24   one-time person search as required by Intelius.com, using her Bank of America credit card and, in
25   so doing, had to provide Intelius with her confidential credit card account information in order to
26   conduct the "person search" on Intelius' website. Plaintiff Ackbarali was tricked by the deceptive
27   nature of Defendants' presentation of the interstitial page for the Negative Option Programs, and
28   became enrolled in Adaptive's "Privacy Matters Identity" Negative Option Program for which she

FIRST AMENDED CLASS ACTION COMPLAINT                                                    - 5 -
No. 8:09-cv-01031-AG-MLG

1    did not intend to enroll. As a direct and proximate result of the deceptive nature of Defendants'
2    post-transaction marketing of the Negative Option Programs, Plaintiff Ackbarali did not understand
3    that she had been enrolled in the Negative Option Programs or would be charged for such. But-for
4    Defendants' deceptive and misleading post-transaction marketing of the Negative Option Programs
5    on the www.intelius.com website, Plaintiff Ackbarali would not have clicked the large
6    confirmation button enrolling her into the ValueMax Negative Option Program.

7        17.    The credit card information Plaintiff Ackbarali previously provided to Intelius to
8    purchase the "people search" service referenced above was then charged for, at least, the following
9    unrequested Negative Option Programs: a 4/13/08 charge from "AP9 PMIDENTITY.COM-V" for
10   $19.95, a 5/13/08 charge from "AP9 PMIDENTITY.COM-V" for $19.95; and a 6/5/08 charge
11   from "AP9 PMIDENTITY.COM-V" for $19.95. None of these charges to Ackbarali's credit card
12   were made with her knowledge, authorization or consent. Further, the misleading and deceptive
13   nature of the Intelius.com website and Intelius' lack of clear and adequate disclosures concerning
14   the Negative Option Programs as described herein, caused Plaintiff Ackbarali and the Class to
15   incur and pay the charges for such Negative Option Programs as they were charged to their credit,
16   debit or charge cards.

17       18.    Defendant Intelius, Inc., is a Delaware Corporation with its principal place of
18   business at 500 108th Avenue, NE, 25th Floor, Bellevue, WA, 98004. At all times relevant to this
19   lawsuit, Intelius was and is the parent corporation of defendant Intelius Sales, controlling each
20   facet of Intelius Sales' business and management operations including broad policy decisions,
21   routine matters and day-to-day functions. Intelius, Inc. owns and operates the Intelius.com
22   website, and receives a significant portion of the the monies obtained by Intelius Sales Company
23   LLC from defendant Adaptive arising out of the Marketing Agreement described herein.

24       19.    Defendant Intelius Sales Company LLC (a/k/a Intelius Sales LLC), is a Nevada
25   limited liability company having its principal executive offices at 500 108th Avenue, NE, 25th
26   Floor, Bellevue, WA, 98004. Intelius Sales Company LLC is a party to the Marketing Agreement
27   with defendant Adaptive described herein, provides Plaintiffs and the Class' credit, debit or charge

28

1  card information to defendant Adaptive pursuant to the Marketing Agreement, and receives the

2  monies (*i.e.*, "Bounty Fees") from Adaptive for doing so.

3       20.       Defendant Adaptive Marketing LLC, is a Delaware limited liability company

4  having its principal executive offices at 20 Glover Avenue, Norwalk, CT, 06850. Defendant

5  Adaptive is a signatory to the Marketing Agreement with defendant Intelius Sales Company LLC,

6  receives Plaintiffs and the class' credit, debit or charge card and other information from Intelius,

7  and pays Intelius "Bounty Fees" for enrolling Plaintiffs and the Class into the Negative Option

8  Programs pursuant to the Marketing Agreement described herein. Adaptive is the wholly owned

9  subsidiary of non-party Vertrue, Inc., and operates the post-transaction marketing of the Negative

10  Option Programs on behalf of Vertrue.

11  **IV.    STATEMENTS OF FACTS**

12       21.       Intelius describes itself as "a leading Information Commerce company that

13  provides intelligence services to consumers over the Internet." Intelius owns and maintains a

14  network of internet websites that are programmed to funnel online visitors to its primary website,

15  Intelius.com. In 2007, this "Intelius network" was one of the top 100 most-visited web properties

16  in the United States. Intelius also has established relationships with leading online portals and

17  directories, including Idearc, InfoSpace, MSN, Yahoo! and YELLOWPAGES.COM, for the

18  purpose of marketing Intelius on their websites and directing online visitors to Intelius.com.

19       22.       Defendant Intelius initially channels Plaintiffs and the Class to the Intelius.com

20  website by offering a number of "Requested Information," *i.e.*, packets of information on

21  individuals and/or businesses such as a "background check," "reverse phone lookup," "people

22  search," "email search," "social net search," or similar rudimentary information retrieval service.

23       23.       Once at the Intelius.com website, Defendants' process of post transaction

24  marketing of the Negative Option Programs uniformely proceeds as follows:

25       (a)       Consumers select from a menu of Requested Information from Intelius.com and add

26  them to their online shopping cart;

27

28

FIRST AMENDED CLASS ACTION COMPLAINT                                                    - 7 -
*No. 8:09-cv-01031-AG-MLG*

1    (b) . Customers enter their credit/debit card and billing information on an order
2    confirmation page and purchase the Requested Information by clicking a button that states
3    "Complete the Purchase and Show My Report";

4    (c) Before the Intelius.com website provides customers their report containing the
5    Requested Information, the Intelius.com website takes them to an "interstitial" page containing the
6    post-transaction upsell marketing for the Negative Option Programs. The interstitial page for the
7    Programs requires customers of www.intelius.com to affirmatively decline the Negative Option
8    Program offer in order to avoid being enrolled and charged, and to confirm their prior purchase of
9    the Requested Information;

10   (d) If the consumer enters their email address and clicks a large, prominent red button
11   on the interstitial page stating: "YES, And show my report" (the "Confirmation Button"), they are
12   taken to another page containing their Requested Information. According to former Intelius
13   customer service representatives Donte Bell and Fritz Etienne, Defendants do not further mention
14   the Negative Option Program(s) on the Intelius.com website, or provide any kind of confirmation
15   of the purported enrollment or transaction reciept.

16   24.    Defendants' interstitial page for the Negative Option Programs uses the
17   following (non-exhaustive) tactics, which, taken together or separately, make the page likely to
18   mislead a reasonable consumer:

19   (a) Prominently featuring, and highlighting certain language on the interstitial page in
20   large font size, and color highlights, including "Thank You your order has been successfully
21   completed", above "$10.00 CASH BACK" or "FREE CREDIT REPORT" (in red), above "Please
22   type in your email address below" (highlighted in green), above a large button stating "YES, And
23   show my report" (in red). These highlighted statements distract attention away from any purported
24   disclosures concerning the Negative Option Programs;

25   (b) Using a confirmation button that misleadingly states "YES, And show my report"
26   instead of the button Intelius uses for the Requested Information order confirmation page:
27   "Complete the Purchase and Show My Report" that creates the impression that the interstitial page
28   is part of consumers' prior purchase of the Requested Information;

FIRST AMENDED CLASS ACTION COMPLAINT                                            - 8 -
No. 8:09-cv-01031-AG-MLG

1    (c)    Failing to format the "No, show my report" link on the interstitial page to appear as

2    a button or the appearance of an internet link, and using small grey lettering that blends in with the

3    page background;

4    (d)    Placing the "No, show my report" negative option to decline enrollment in the

5    Program *offscreen* for the standard computer screen resolution of 1024 x 768, requiring the

6    consumer to scroll-down the page to decline enrollment. [5]

7    (e)    Obfuscating any purported disclosures in gray lettering no larger than approximately

8    half the size of other highlighted information;

9    (f)    Burying key language concerning the cost, charge to the credit / debit card used to

10   purchase Requested Information, the "free to pay" conversion feature, and phone number to cancel

11   the Negative Option Program below unrelated text, in the middle of a block paragraph with

12   extremely low readability scores that require high levels of sophistication and/or education to

13   understand;

14   (g)    Using "preaquired account information:" and the entry of an email address as a

15   proxy for re-entering payment information to confirm acceptance of the Programs; and

16   (h)    Offering the Programs on a "free to pay" basis.

17   25.    According to CW1, Intelius and Adaptive hire psychologists and behavioral

18   specialists to carefully design the interstitial page to hit human psychological cues and obfuscate

19

20

21   ⁵ Thus, it does not visually appear that the consumer is being presented an "offer" that can be
     accepted or declined. According to Confidential Witness No. 1, ("CW1"), and confirmed by former
22   Intelius Customer Service Representatives ("CSRs") Donte Bell ("Mr. Bell") and Fritz Ettienne
     ("Mr. Ettienne"), the small, grey hyperlink "No, show my report" on the interstitial page is off-
23   screen for the standard display settings on computer monitors. CW1 reports that the page "was
     designed that way."
24   CW1 was a Customer Service Team Lead Assistant, the second highest level manager in
     Intelius' customer service office. CW1 began work at Intelius as a CSR in the company's "old"
25   customer service center on the 14ᵗʰ floor of Intelius' Bellevue, Washington headquarters. CW1 was
     promoted to Team Lead assistant, and remained in that position until early December 2009. Mr.
26   Bell and Mr. were both CSRs in Intelius' Bothell, WA customer service center from August 2009
     to November 2009 in temporary positions employed by Aerotek Professional Services. According
27   to Mr. Bell, he was terminated from Intelius on November 6, 2009 for repeatedly and openly
     expressing his opinion to his superiors that Intelius is a "scam."
28

1  any purported disclosures, in an effort to cause Plaintiffs and the Class to inadvertently enroll in the

2  Negative Option Programs.[6]

3  26.    Factors related to the Negative Option Programs require a heightened level of

4  disclosure to avoid misleading the reasonable user of the Intelius.com website, including, but not

5  limited to:

6      (a)    Defendants placement of the interstitial page for the Negative Option Programs after

7  complete consummation of the transaction for the Requested Information such that no reasonable

8  consumer would be on alert that a new financial relationship with a previously undisclosed third-

9  party is being presented, or that careful scrutiny of the interstitial page is otherwise required;

10     (b)    The credit monitoring / identity protection, and consumer discount features of the

11 Programs are completely unrelated to the Requested Information Intelius.com customers intend to

12 purchase;

13     (c)    The financial costs of the Negative Option Programs are significant in relation to the

14 costs of the Requested Information. For example, Plaintiff Ackbarali's one time Purchase of

15 Requested Information cost $2.95 versus the $59.85 in charges for three months of the Privacy

16 Matters Identify Program, which would have continued in perpetuity if not noticed and cancelled;

17     (d)    Low brand recognition for Adaptive and the individual Negative Option Program

18 brands such as "ValueMax" and "Privacy Matters Identity" that limits the opportunites of

19 consumers to understand the and weigh Program costs and benefits; and

20     (d)    Defendants' use of "preacquired account information" that lacks transparency and is

21 contrary to the expectations of the reasonable consumer.

23     [6] CW1 represents that he learned these facts during his time as a Customer Service Team Lead
24 Assistant tasked with gathering customer feedback from CSRs that was requested by management
   for the purpose of "tweaking" the Intelius.com website. According to CW1, he participated in
25 several meetings with Intelius executives, including Susan Koehler (Chief Marketing Officer), Jim
   Adler (Chief Privacy Officer), Lisa Jordan (Senior Manager Customer Support), Leanna Gherman
26 (Customer Service Supervisor) and "Sangeetha" (Programming Manager) concerning customers'
   main complaints to allow management to make targeted modifications to the Intelius.com website,
27 including the Program pages, to make it more effective at causing consumers to inadvertently
   enroll in the Programs.

28

1    27.    Defendants offer at least the following Negative Option Programs on the

2    Intelius.com interstitial pages:

3         • "24 Protect Plus"

4         • "Passport to Fun Plus"

5         • "Business Max"

6         • "Privacy Matters"

7         • "Privacy Matters 123"

8         • "Privacy Matters Credit"

9         • "Privacy Matters Identity"

10        • "SavingsAce"

11        • "SavingSmart"

12        • "Shopping Essentials Plus"

13        • "ValueMax"

14   28.    According former CSRs Bell and Ettienne, the layout, language, and purported

15   "signup" process for interstitial pages for the Negative Option Programs are virtually identical

16   regardless of the individual Negative Option Program presented. This is confirmed by Intelius'

17   "Customer Support Training" Manual (the "CST Manual"),[7] which states: "[i]nterstitial marketing

18   is presented to customers after they have completed the 3-step confirmation checkout process and

19   before they view their report. There are multiple offers presented and are generally designated by

20   an offer of $10 cash back or a free credit report. ... Customers accept these offers by typing their

21   email address twice and selecting 'Yes, And show my report' link at the bottom of the page."

22   29.    CW1 represents that since he began working at Intelius in September 2008, the

23   layout, language, and process of interstitial pages have remained materially constant, with one

24   distinction. Prior to October 30, 2008, the interstitial page for the Negative Option Programs

25   simply stated "Thank you, your offer has been successfully completed, please enter your email

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [7] According to Mrrs. Bell and Ettienne, during the initial CSR training program, all CSR trainees
     are provided with a copy of Intelius' CST Manual.

28

1  address below." Below this text was a box for the customer to enter their email address, and click
2  the large Confirmation Button that states "YES, And show my report."

3      30.      Defendants do not require Plaintiffs and the Class to re-enter their credit/debit
4  card information on the interstitial page before enrolling them in the Negative Option Programs.
5  Similarly, any purported "disclosures" on Intelius.com's interstitial page are designed to be
6  deceptive, confusing, and misleading, and thus Defendants' procedure of requiring Plaintiffs and
7  the Class to enter their email address and click the Confirmation Button, fails to obtain express
8  agreement to be charged for the Negative Option Programs using the account number entered for a
9  purchase of Requested Information.

10     31.      Plaintiffs and other Class members are deceived and/or were likely be misled or
11 deceived by the language, layout, process, procedures and organization of the Intelius.com website
12 as it relates to the Negative Option Programs. Plaintiffs were decieved by Defendants' misleading
13 presentation of the interstitial page for the Negative Option Programs, as evidenced by the fact that
14 they became enrolled in Negative Option Programs for which they did not intend to enroll. Nor did
15 Plaintiffs have knowledge of such enrollment until disclosed to them in a billing statement by their
16 credit card company.

17     32.      For Plaintiffs and Class members calling into the Intelius call center, Intelius
18 company protocol requires CSRs to attempt to convince callers claiming lack of knowledge of
19 enrollment in, and/or refund for the Negative Option Programs, that they had knowingly entered
20 into a valid transaction. CSRs use scripted language froom the CST Manual as instructed during
21 CSR training.  CSRs are not permitted to issue refunds for Negative Option Programs issued by
22 Adaptive, and are only permitted to issue a refund if the customer threatens to contact the Better
23 Business Bureau, Attorney General or dispute the charge with their financial institution.
24 According to CW1, and Mrrs. Bell and Ettienne, well over 90 percent of calls coming into Intelius'
25 customer service center are from angry and confused customers seeking to dispute unauthorized or
26 unrecognized charges on their credit / debit card statements.  The same is true for Adaptive.  The
27 Rockefeller Report states that "Vertrue customer service centers are almost entirely dedicated to
28 handling  the  large  volume  of  calls  from  angry  and  confused  consumers  requesting

1  cancellations....while a Vertrue employee had estimated that 'cancellation calls represent
2  approximately 98% of call volume.'"

3      33.      Mrrs. Bell and Ettienne represent that the preponderant part of Intelius' CSR
4  training program is focused on instructing CSR trainees the approved method for dealing with
5  angry callers. According to the "CS New Hire Training Assessment" document provided to CSR
6  trainees, Intelius CSRs are taught the procedures for responding to the following common caller
7  complaints: "I can't believe you signed me up for this service!! I was only trying to purchase a
8  phone report!" (emphatic punctuation in original) and "I want to cancel this service and a full
9  refund. Your company has fraudulently charged my credit card." The CST Manual also teaches
10 Intelius' standard procedures for CSRs to follow when the consumer states that they are recording
11 the call, and when the customer states they have their attorney on the line. The Rockefeller Report
12 also cites to "a manual for Vertrue employees", which provides a "Scripted Response" to answer
13 the question, "How Did I get Signed Up for this???"[8]

14     34.      Intelius' October 19, 2009 Form S-1 filed with the SEC (the "Form S-1"), states
15 that:

18     "[s]ales of ... post-transaction advertising of other subscription services, appear to
       be the focus of many customer complaints, and our efforts to reduce the incidence
19     of complaints may also reduce our revenues from ...our advertising."
                                    *   *   *
20      "we are currently on probation with one of our payment card associations as a
21     result of elevated levels of chargebacks."
                                    *   *   *
22     "[t]he office of the Washington State Attorney General has started a formal
       inquiry, including depositions of some of our executives, about some of our
23     business practices, particularly those involving our business relationship with
       Adaptive Marketing and associated with our sales of subscription services."
24

25     35.      Defendants recognize that the misleading *manner in which* the Negative Option
26 Programs are disclosed, and by which customers are enrolled therein is the primary reason for the

27

28  _____
    [8] *Citing, Online/Internet Marketing Main Menu* (May 31, 2007) (Vertrue Doc. 82269).

1    revenue resulting from these Negative Option Programs. Intelius' Form S-1 states that: "if the

2    *manner in which* [Adaptive] advertises its services on our websites is changed so that fewer

3    customers accept the offers, our financial results could be harmed." (emphasis added).

4
5    36.     According to Mr. Bell, during his initial CSR training in late August 2009, he

6    expressed his opinion that the Intelius.com website disclosures of Negative Option Programs

7    appeared confusing and misleading. He inquired of his trainer Stacy Ottman why Intelius did not

8    change the website's presentation of Negative Option Programs to be clearly comprehensible to

9    Intelius.com users. According to Mr. Bell, Stacy Ottman answered that "the marketing group has

     no reason to redesign the website because Intelius is making too much money."

10
11   37.     In fact, the Form S-1 admits that "Our operating results depend significantly on

12   our ability to acquire and use customers' billing information. If the rules are changed to make it

13   more difficult to acquire and use customers' billing information provided for one transaction in

14   another transaction for the same consumer, our operating results could be harmed."

15       A.   **THE ROCKEFELLER REPORT REVEALS THE DECEPTIVE NATURE
              OF DEFENDANTS' POST-TRANSACTION MARKETING OF NEGATIVE
16            OPTION PROGRAMS**

17
18   38.     On November 16, 2009, the Senate Committee on Commerce, Science and

19   Transportation, Office of Oversignt and Investigations issued their Staff Report for Chairman

20   Rockefeller on post transaction marketing entitled *Aggressive Sales Tactics on the Internet and*

21   *Their Impact on American Consumers* (the "Rockefeller Report" by the "Senate Committee"). The

22   Rockefeller Report was followed by a hearing on the matter before the entire Senate Committee.

23   The Rockefeller Report focused on, *inter alia*, Defendant Adaptive and its parent company,

24   Vertrue, Inc., and concluded that "It is clear at this point that [Adaptive] use[s] highly aggressive

25   sales tactics to charge millions of American consumers for services the consumers do not want and

26   do not understand they have purchased."

27
28

1      39.      On November 6, 2009, Chairman Rockefeller sent formal and informal requests
2   for information to sixteen companies that are partnered with Vertrue, including Intelius.[9]  In the
3   course of the investigation, the Senate Committee received approximately 128,000 internal
4   documents from Adaptive / Vertrue related to complaints from former customers, screenshots of
5   enrollment offers, employee handbooks, contracts, and correspondence between Vertrue and its
6   partners.

7      40.      The documents provided by Vertrue to the Senate Committee indicate that
8   Vertrue receives "an overwhelming amount of negative feedback from consumers once the
9   consumers learn they are paying 'members' of clubs they have never heard of."

10      41.      The Rockefeller Report goes on to state that "Internal documents reviewed by
11   Committee staff show that Vertrue know[s] that most of the 'members' they acquire through their
12   aggressive online sales tactics do not understand they have been enrolled in a program that charges
13   their credit or debit card on recurring basis."  Likewise, as a direct and proximate result of the
14   deceptive nature of Defendants' post-transaction marketing of the Negative Option Programs,
15   Plaintiffs did not understand that they had been enrolled in the Negative Option Programs or would
16   be charged for such.

17      42.      Importantly, the Rockefeller Report reviewed the rates at which purported
18   "members" in Adaptive / Vertrue Negative Option Programs actually attempted to use the features
19   of the program(s) they were paying for.  These rates were extremely low relative to the number of
20   people enrolled.  According to the Rockefeller Report, a "[v]ery large percentage of the members
21   never utilize the benefits of the programs or even take the simple step of logging into [Vertrue's
22   website] to access the benefits they are paying for each month. Internal data and member surveys
23   commissioned by Vertrue clearly show that the [company understands] that the majority of their
24   paying 'members' have little or no awareness of their financial relationship with [Vertrue]."  The
25   Report goes on to say that:

26

27      [9] *Chairman Rockefeller Requests Information from Web Retailers in "Mystery Charges"*
28   *Investigation* (Nov. 6, 2009).

FIRST AMENDED CLASS ACTION COMPLAINT                                                                   - 15 -
No. 8:09-cv-01031-AG-MLG

One of the documents Vertrue produced to the Committee, for example, is a summary of June 22, 2009, feedback from consumers who had visited one of its membership websites. Of the "members" who completed the survey, 43% indicated they were visiting "to find about the charge on my credit card that I did not recognize" and 44% indicated they were visiting "to cancel the program." Only one member indicated he or she was there "to find out more about my membership benefits" and none of the respondents were there to "obtain my member ID." (Internal Vertrue e-mail (Jun. 23, 2009) (Vertrue Doc. 118778-84).

\* \* \*

Vertrue's internal data on their members' rates of cancellations and their rates of usage of the programs' benefits provide further evidence that online consumers are not aware they have been enrolled in membership clubs offered by [Vertrue]. Overwhelmingly, consumers cancel their memberships once they realize they are being charged on a monthly basis and very few customers use the benefits offered by the membership programs.

43.     Consumers of Intelius.com who become enrolled in the Negative Option Programs never receive the reward on the Intelius.com interstitial page. Plaintiffs did not receive $10 cash back nor did they receive a free credit report as consideration for enrolling in the Negative Option Programs. The Rockefeller Report mirrors these findings:

Information provided to the Committee by Vertrue also shows that the vast majority of consumers who enroll in their programs never receive the "cash back award" or other incentive promised them in the enrollment offer. ...a prominent feature of the post-transaction offers Vertrue makes to consumers is an up-front gift offer such as $10 Cash Back ... which appears to be related to the website where the consumer has just made a purchase.

\* \* \*

According to information provided by [Vertrue] of the 34,262,674 members who were promised automatic cash gifts or other incentives, only 3% actually received the promised enrollment benefit.

44.     The low usage rate of Plaintiff and the Class of the purported benefits of the Negative Option Programs is highly probative of the fact that the interstitial page for the Negative Option Programs is likely to decieve consumers acting reasonably under the circumstances. Plaintiffs never logged into the Negative Option Programs' web pages, and similarly did not otherwise attempt to use the purported benefits of the Negative Option Programs in which Plaintiffs were members.

FIRST AMENDED CLASS ACTION COMPLAINT                                           - 16 -
No. 8:09-cv-01031-AG-MLG

1    **B. THE MARKETING AGREEMENT BETWEEN INTELIUS AND ADAPTIVE**

2         45.    Intelius (through defendant Intelius Sales Company LLC) and Adaptive

3    maintain an ongoing relationship memorialized by the agreement dated on or about July 10, 2007

4    (the "Marketing Agreement"). The Marketing Agreement describes the cooperative relationship

5    between the companies in allocating the acts of misconduct herein described.

6         46.    The "Marketing Agreement" specifies that "the Customer will not need to enter

7    his or her billing information on the Enrollment Form (or any related landing page) after linking

8    from an Ad Unit[10] in order for Adaptive to charge the applicable [Negative Option Program]

9    membership fee to such Customer's credit or charge card." That is, the Marketing Agreement

10   memorializes Defendants' use of pre-acquired account information of Plaintiffs in the Class for the

11   Negative Option Programs. This is confirmed by Intelius' Form S-1, which admits that "[w]e have

12   a relationship with Adaptive Marketing, a subsidiary of [Vertrue], pursuant to which we have

13   provided Adaptive Marketing with consumer billing information for consumers who have

14   purchased one or more of our services."

15        47.    The "Marketing Agreement" also specifies that Adaptive shall manage the

16   billing and collecting of "membership" fees from Plaintiffs and each Class member enrolled in a

17   Negative Option Program, stating that "Adaptive shall be responsible for servicing the [Negative

18   Option Program] membership for each Member."

19        48.    Defendants' relationship in the fashion above described frustrates the ability of a

20   reasonable consumer, including Plaintiffs and other Class members, to effectively communicate

21   with Adaptive and/or to inquire about and/or cancel the multiple Negative Option Program(s) and

22   their corresponding monthly charges. In fact, the Marketing Agreement is structured to *prohibit*

23   Intelius from engaging in communications with customers about service(s) and/or enrollment in the

24

25        [10] Under the Marketing Agreement, the term "Ad Unit" means a specific graphical and textual
     presentation unit (banner, pop-up or pop-under) or text link marketing or otherwise promoting an

26   Adaptive Program (a) transmitted or displayed by Intelius to a particular Customer, (b) containing
     a link or an Adaptive Landing Page, (c) containing a pixel provided by Adaptive to ensure tracking

27   of such unit by Adaptive and (d) displayed in such a format as Adaptive shall designate (and is
     reasonably acceptable to Intelius).

28

1    Negative Option Programs. To wit, the Marketing Agreement states "Adaptive shall be
2    responsible for all customer service communications to Members with respect to the Programs and
3    the benefits and premiums in connection therewith and Intelius **shall not communicate to any**
4    **Member with respect to the Programs or such benefits or premiums without Adaptive's prior**
5    **written consent."** No such "prior written consent" has ever been provided to Intelius for the
6    purpose of communicating with "members" regarding these Negative Option Programs.

7          49.      Pursuant to the Marketing Agreement, all language, links, and other facts and
8    representations of the Intelius.com website concerning Adaptive and/or the Negative Option
9    Programs are expressly provided and approved by Adaptive in writing. Furthermore, Intelius is not
10   permitted to edit, modify or revise any such material without Adaptive's prior written consent.

11         50.      Intelius is paid handsomely for managing the Intelius.com website and
12   providing the credit, debit or charge card information of Plaintiffs and the consumer Class to
13   Adaptive as described herein.

14         51.      The Marketing Agreement specifies that Intelius receives a percentage and/or
15   fixed dollar amount per Intelius.com customer "enrolled" into the Negative Option Programs and
16   requires Intelius to use every effort to maximize the number of Intelius.com customers that are so
17   enrolled. The payments to Intelius by Adaptive are referred to in the Marketing Agreement as
18   "Bounty Fee(s)." Intelius is accordingly incentivized to make the Intelius.com website as
19   misleading as possible and deceptive to consumers. By way of example, since Intelius entered into
20   the Marketing Agreement with Adaptive in July of 2007, Defendants' practices as alleged herein
21   have been a major contributor to Defendants' revenue and profit growth. Furthermore, Intelius'
22   Form S-1 reports that 27.7% of its 2008 net revenue, or approximately $34 million came from
23   "Bounty Fees" for its post-transaction marketing of Adaptive Negative Option Programs. It is
24   substantially greater since.

25   **V.      CLASS ACTION ALLEGATIONS**

26         52.      Plaintiff Ackbarali brings this action as a class action pursuant to Federal Rules
27   of Civil Procedure 23(a), (b)(2) and (b)(3) for the following Class of persons:

28
     FIRST AMENDED CLASS ACTION COMPLAINT                                    - 18 -
     No. 8:09-cv-01031-AG-MLG

> All persons and entities who, while residents of the State of California, and since August 26, 2005, became enrolled in a post-transaction marketing program on the www.intelius.com website and were billed membership charges by Adaptive Marketing LLC and were damaged thereby.

Excluded from the Class are all governmental entities, Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant, as well as any judge, justice or judicial officer presiding over this matter and members of their immediate families and judicial staff.

53. The members of the Class are so numerous that joinder of all Class members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and will be ascertained through appropriate discovery, Plaintiffs are informed and believe that there are tens of thousands of members in the proposed Class. According to Intelius' Form S-1, from 2006 through 2008, Intelius had 7,937,000 unique transactions from the Intelius.com website. As Plaintiffs and members of the Class enter, at the least, their name, address, and email into the Intelius.com website upon purchasing a Requested Information, members of the Class can be identified from records maintained by Defendants.

54. Class members are identifiable because Intelius' computer systems, including the "Intelius Admin Console" records and tracks the name, addess, user ID, email, phone number, IP address, transaction history, including date, time and amount of credit / debit card charges, refunds, and cancellations, order number, credit card billing information, customer service history, and enrollment in Negative Option Programs by transaction number, date and time, "Vertrue Member ID," and "Offer Information." In other words, the Intelius Admin Console computer system maintains all data necessary to identify Class members.

55. Each Class member was charged and paid Defendants a liquidated monthly amount for the particular Negative Option Program(s), which multiplied by the number of times such Class members were charged, can determine Class-wide restitution and/or damages as maintained in Defendants' records.

56. Plaintiffs' claims are typical of the claims of the other members of the Class. All members of the Class have been and/or continue to be similarly affected by Defendants'

FIRST AMENDED CLASS ACTION COMPLAINT                                                    - 19 -
No. 8:09-cv-01031-AG-MLG

1 | wrongful conduct as complained of herein in violation of California law. Plaintiffs have no
2 | interests adverse to the Class.

3 | 57. Plaintiff will fairly and adequately protect the Class members' interests and has
4 | retained counsel competent and experienced in consumer class action lawsuits and complex
5 | litigation.

6 | 58. Common questions of law and fact exist as to all Class members and
7 | predominate over any questions wholly affecting individual Class members. Among the questions
8 | of law and fact common to the Class are, *inter alia*:

9 | (a) Whether Defendants made misstatements of material fact, or concealed material
10 | facts concerning the Negative Option Programs, and whether such statements, omissions,
11 | presentation or concealment of material facts deceive, or are likely to mislead and deceive
12 | consumers accessing the Intelius.com website;

13 | (b) Whether Defendants' presentation of the Negative Option Programs on the
14 | Intelius.com interstitial pages is deceptive, constitutes a deceptive device, and/or is likely to
15 | decieve consumers of the Intelius.com website acting reasonably under the circumstances;

16 | (c) Whether Defendants false advertising of the Negative Option Programs was
17 | perpetrated as part of a scheme with the intent not to sell the Negative Option Programs as
18 | advertised;

19 | (d) Whether the utility of Defendants' conduct to Plaintiff and the Class (if any) is
20 | outweighed by the magnitude of the harm experienced by them and other lawfully operating
21 | persons and competitors;

22 | (e) Whether Defendants' presentation of the Negative Option Programs on the
23 | Intelius.com interstitial pages constitutes false advertising or unfair, deceptive, or unlawful
24 | business acts or practices under, *inter alia*, CAL. BUS. & PROF. CODE §§ 17200, *et seq.* and §§
25 | 17500, *et seq.*;

26 | (f) Whether the Intelius Defendants' acts, conduct and practices, as alleged herein, are
27 | unlawful and in violation of the Consumers Legal Remedies Act, Civ. Code § 1770, subsections
28 | (2), (3), (13), (14), (17) and (19), including whether:

FIRST AMENDED CLASS ACTION COMPLAINT                                       - 20 -
*No. 8:09-cv-01031-AG-MLG*

(i)     Intelius misrepresents and deceptively discloses the source, sponsorship, and approval of the Negative Option Programs and misrepresents and deceptively discloses Intelius' affiliation, connection and relationship with Defendant Adaptive.

(ii)    Intelius makes false and misleading statements that Plaintiffs and the Class will receive $10 cash back or a free credit report, without sufficiently disclosing that the reason for, or existence of these price reductions, is a means to cause Plaintiff and the Class to inadvertently enroll in the Negative Option Programs.

(iii)   Intelius misrepresents the legal effect of the actions taken by Plaintiffs and the Class on the interstitial page for the Negative Option Programs as obligating Plaintiffs and the Class to make recurring monthy payments for the Negative Option Programs, and otherwise represents that the act of providing an email address and clicking the Confirmation Button confers or involves rights, remedies and/or obligations which such actions do not have or involve, and/or which are prohibited by law.

(iv)    Intelius represents on the interstitial pages for the Negative Option Programs that Plaintiffs and the Class will receive $10 cash back or a free credit report when the earning of that benefit is contingent upon Plaintiffs and the Class members' further action to redeem such rebate, discount, or other economic benefit subsequent to the consummation of the transaction for the Requested Information and/or the Program(s); and

(v)     Intelius inserts unconscionable provisions in the language on the interstitial page for the  Negative Option Programs that Intelius asserts, *inter alia*, is binding on Plaintiffs and the Class, including obligating Plaintiffs and the Class to pay repetitive monthly memberships for the Negative Option Programs without adequate legal consideration or offer and acceptance.

(g)     Whether Defendants acted in concert or were otherwise each others' agent, alter ego, aiders and abetters, enabelors, or duly authorized representatives with respect to the  Negative Option Programs or otherwise aided and abetted or enabled the misconduct of other defendants as alleged herein;

1      (h)    The nature and extent of damages and/or equitable remedies to which Plaintiff and
2  the other members of the Class are entitled.

3      59.    A class action is superior to all other available methods for the fair and efficient
4  adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the
5  damages suffered by individual Class members may be relatively small, the expense and burden of
6  individual litigation make it virtually impossible for Class members to individually redress the
7  wrongs done to them. There will be no difficulty in managing this action as a class action.

8      60.    Defendants have acted on grounds generally applicable to the entire Class with
9  respect to the matters complained of herein, thereby making appropriate the relief sought herein
10  with respect to the Class as a whole.

11      61.    Plaintiff contemplates that upon certification of this class action, individual
12  notice to Class members is appropriate.

13                                **COUNT I**

14                **PLAINTIFF ACKBARALI AGAINST ALL DEFENDANTS**

15            **FOR VIOLATION OF BUS & PROF CODE §§ 17200 *ET SEQ.***

16

17      62.    Plaintiff incorporates by reference and realleges each and every paragraph
18  alleged above as though fully alleged herein.

19      63.    Defendants acts, conduct and practices, as described herein, constitute unfair,
20  deceptive, and unlawful business acts and practices within the meaning of California Business and
21  Professions Code sections 17200, *et seq.*

22      64.    Defendants' acts, conduct and practices, as alleged herein, were and are unfair,
23  in that the utility of Defendants conduct (if any) is greatly outweighed by the substantial harm to
24  Plaintiff, Class members, and the General Public subjected to the enrollment in Negative Option
25  Program(s) and the charges thereafter billed to the consumer's credit / debit card, and/or
26  Defendants conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to
27  Plaintiff, the Class members and the general public.

28

1        65.       Defendants acts, conduct and practices, as alleged herein, were deceptive

2   pursuant to the UCL in that they were likely to deceive Plaintiff, Class members, and the general

3   public within the meaning of that statute.

4        66.       The Intelius Defendants' acts, conduct and practices, as alleged herein, are

5   unlawful and in violation of the Consumers Legal Remedies Act, Civ. Code § 1770, subsections

6   (2), (3), (13), (14), (17) and (19). Intelius misrepresents and deceptively discloses the source,

7   sponsorship, and approval of the Negative Option Programs and misrepresents and deceptively

8   discloses Intelius' affiliation, connection and relationship with Defendant Adaptive. Intelius makes

9   false and misleading statements that Plaintiff and the Class will receive $10 cash back or a free

10   credit report, without sufficiently disclosing that the reason for, or existence of these price

11   reductions, which is a means to cause Plaintiff and the Class to inadvertently enroll in the Negative

12   Option Programs. Intelius misrepresents the legal effect of the actions taken by Plaintiff and the

13   Class on the interstitial page for the Negative Option Programs as obligating Plaintiff and the Class

14   to make recurring monthy payments for the Negative Option Programs, and otherwise represents

15   that the act of providing an email address and clicking the Confirmation Button confers or involves

16   rights, remedies and/or obligations which such actions do not have or involve, and/or which are

17   prohibited by law. Intelius represents on the interstitial pages for the Negative Option Programs

18   that Plaintiff and the Class will receive $10 cash back or a free credit report when the earning of

19   that benefit is contingent upon Plaintiff and the Class members' further action to redeem such

20   rebate, discount, or other economic benefit subsequent to the consummation of the transaction for

21   the Requested Information and/or the Negative Option Program(s).    Intelius also inserts

22   unconscionable provisions in the language on the interstitial page for the Negative Option

23   Programs that Intelius asserts, *inter alia*, is binding on Plaintiff and the Class, including obligating

24   Plaintiff and the Class to pay repetitive monthly memberships for the Negative Option Programs

25   without adequate legal consideration or offer and/or acceptance.

26        67.       Defendants' unfair and deceptive business acts and practices are described

27   herein and include, but are not limited to, deceptively and/or misleadingly employing the following

28

FIRST AMENDED CLASS ACTION COMPLAINT                     - 23 -
*No. 8:09-cv-01031-AG-MLG*

1    tactics, which, taken together or separately, make the www.intelius.com interstitial page likely to
2    decieve a reasonable consumer:

3           (a)    Prominently featuring, and highlighting certain language on the interstitial page in
4    large font size, and color highlights, including "Thank You your order has been successfully
5    completed", above "$10.00 CASH BACK" or "FREE CREDIT REPORT" (in red), above "Please
6    type in your email address below" (highlighted in green), above a large button stating "YES, And
7    show my report" (in red). These highlighted statements distract attention away from any purported
8    disclosures concerning the Negative Option Programs;

9           (b)    Using a confirmation button that misleadingly states "YES, And show my report"
10   (the "Confirmation Button") instead of the button Intelius uses for the Requested Information order
11   confirmation page: "Complete the Purchase and Show My Report" that creates the impression that
12   the interstitial page is part of consumers' prior purchase of the Requested Information;

13          (c)    Failing to format the "No, show my report" link on the interstitial page to appear as
14   a button or the appearance of an internet link, and using small grey lettering that blends in with the
15   page background;

16          (d)    Placing the negative option to decline enrollment in the Program *offscreen* for the
17   standard computer screen resolution of 1024 x 768, requiring the consumer to scroll-down the page
18   to decline enrollment.

19          (e)    Obfuscating any purported disclosures in gray lettering no larger than approximately
20   half the size of other highlighted information;

21          (f)    Burying key language concerning the cost, charge to the credit / debit card used to
22   purchase Requested Information, the "free to pay" conversion feature, and phone number to cancel
23   the Negative Option Program below unrelated text, in the middle of a block paragraph with
24   extremely low readability scores that require high levels of sophistication and/or education to
25   understand;

26          (g)    Using "preaquired account information:" and the entry of an email address as a
27   proxy for re-entering payment information to confirm acceptance of the Programs; and

28          (h)    Offering the Programs on a "free to pay" basis.

1    68.    In addition, Defendants' unfair, unlawful and deceptive business acts and

2    practices as described herein include, but are not limited to, the following:

3        (a)    failing to obtain unambiguous consent from Plaintiff and the Class for enrollment in

4    the Negative Option Programs;

5        (b)    hiring psychologists and behavioral specialists, and otherwise using subterfuge to

6    carefully design the Intelius.com website to hit human psychological cues and obfuscate any

7

8    purported disclosures, in an effort to cause Plaintiff and the Class to inadvertently enroll in the

9    Negative Option Programs;

10       (c)    prohibiting Intelius from addressing customer inquiries regarding Negative Option

11   Program charges; and/or

12       (d)    introducing deception by changing the billing description of Negative Option

13   Programs in a manner that frustrates Plaintiff and the Class' ability to recognize and/or dispute

14   such charges.

15       69.    As a direct and proximate result of Defendants unfair, deceptive, and unlawful

16   business practices as alleged herein, Plaintiff has been wrongfully deprived of money or property.

17   Indeed, Defendants were able to: (a) enroll Plaintiff and the Class in Negative Option Programs

18   without adequate disclosure, authorization or consent; and/or (b) debit unwarranted, improper

19   "membership" charges to the credit, debit or charge cards of Plaintiff and the Class.

20       70.    Plaintiff suffered injury-in-fact as a result of Defendants' deceptive and

21   misleading post-transaction advertising of the Negative Option Programs by being charged, and

22   paying for, unrefunded "membership" charges for the Negative Option Programs.

23       71.    Plaintiff and other consumers are deceived and are likely to continue to be

24   misled or deceived by the language, layout, process, procedures and organization of the

25   Intelius.com website as it relates to the Negative Option Programs. Plaintiff was tricked by the

26   deceptive nature of Defendants' presentation of the interstitial page for the Negative Option

27   Programs, as evidenced by the fact that she became enrolled in Negative Option Programs for

28   which she did not intend to enroll. Nor did Plaintiff have knowledge of such enrollment until

FIRST AMENDED CLASS ACTION COMPLAINT                                              - 25 -
No. 8:09-cv-01031-AG-MLG

1    disclosed to her in a billing statement by her credit card company, *i.e.*, Plaintiff relied on
2    Defendants' deceptive devices concerning the Negative Option Programs.

3    72.    Accordingly, Defendants received and are in possession of excessive and unjust
4    revenues and profits, and/or have caused Plaintiff and other Class members to lose money or
5    property directly as a result of Defendants' wrongful acts and practices. Had Plaintiff known the
6    true facts concerning the Requested Information and/or the Negative Option Programs, she would
7    not have clicked the Confirmation Button or otherwise taken actions that could be construed by
8    Defendants as consent to enroll in the Negative Option Programs.

9    73.    As a result of the above unlawful, deceptive and unfair anticompetitive acts and
10   practices of the Defendants, Plaintiff, on behalf of herself and all others similarly situated, and as
11   appropriate, on behalf of the general public of the state of California, seeks injunctive relief
12   prohibiting Defendants continuing these wrongful practices, and such other equitable relief,
13   including full restitution and the disgorgement of all improper revenues and ill-gotten profits
14   derived from their wrongful conduct to the fullest extent permitted by law. Additionally, Plaintiff
15   requests that the Court award all members of the Class, who were of the attained age of 65 at the
16   time of the Defendants' wrongful debiting of their credit, debit or charge cards for unauthorized
17   Negative Option Programs as alleged herein, to receive a statutory trebling of their restitutionary
18   award pursuant to CAL. CIV. CODE § 3345.

19                                       **COUNT II**

20               **PLAINTIFF ACKBARALI AGAINST ALL DEFENDANTS**

21          **FOR VIOLATION OF BUS & PROF CODE §§ 17500 *ET SEQ.***

22

23   74.    Plaintiff incorporates by reference and realleges each and every paragraph
24   alleged above as though fully alleged herein.

25   75.    Defendants' acts, conduct and practices, as alleged herein, constitute false
26   advertising, and thus violate BUS. & PROF. CODE § 17500 *et seq*.

27   76.    Defendants, with the intent to directly or indirectly sell the Negative Option
28   Programs, made or disseminated or caused to be made or disseminated before the public in

FIRST AMENDED CLASS ACTION COMPLAINT                                              - 26 -
No. 8:09-cv-01031-AG-MLG

1  California, in standardized electronic form over the Intelius.com website, misstatements and
2  deceptive statements of material fact concerning the Negative Option Programs, which (1) were
3  untrue or misleading, and which were known, or which by the exercise of reasonable care should
4  have been known, to be untrue or misleading, and/or (2) which were made as part of a plan or
5  scheme with the intent not to sell the Negative Option Programs as advertised. Reasonable
6  consumers, like Plaintiff and the members of the Class, are likely to be deceived by Defendants'
7  post transaction advertising of the Negative Option Programs. Had Plaintiff known the true facts
8  concerning the Requested Information and/or the Negative Option Programs, she would not have
9  clicked the Confirmation Button or otherwise taken actions that could be construed by Defendants
10  as consent to enroll in the Negative Option Programs.

11  77.     Plaintiff was tricked by the deceptive nature of Defendants' presentation of the
12  interstitial page for the Negative Option Programs, as evidenced by the fact that she became
13  enrolled in a Negative Option Program for which she did not intend to enroll. Nor did Plaintiff
14  have knowledge of such enrollment until disclosed to her in a billing statement by her credit card
15  company, i.e., Plaintiff relied on Defendants' deceptive practices concerning the Negative Option
16  Programs.

17  78.     As a direct and proximate result of Defendants' false advertising practices as
18  alleged herein, Defendants were able to: (a) enroll Plaintiff and the Class into the Negative Option
19  Programs; and/or (b) charge Plaintiff and the Class monthly "membership" charges for the
20  Negative Option Programs, and accordingly received and are in possession of excessive and unjust
21  revenues and profits. Plaintiff Ackbarali suffered injury-in-fact as a result of Defendants' untrue
22  and misleading post-transaction advertising of the Negative Option Programs by being charged,
23  and paying for, unrefunded "membership" charges for the Negative Option Programs.

24  79.     Plaintiff, on behalf of herself and all other similarly situated Class members, and
25  where appropriate, on behalf of the general public of the State of California, seek rescission,
26  disgorgement of all profits obtained from false advertising, an injunction prohibiting Defendants
27  from continuing in such practices, restitution, disgorgement, and any other relief the Court deems
28  acceptable, in accordance with CAL. BUS. & PROF. CODE § 17535. Additionally, Plaintiff requests

FIRST AMENDED CLASS ACTION COMPLAINT                                     -27-
No. 8:09-cv-01031-AG-MLG

| 1 | that the Court award all members of the Class, who were of the attained age of 65 at the time of |

1    that the Court award all members of the Class, who were of the attained age of 65 at the time of

2    Defendants' wrongful debiting of their credit, debit or charge cards for unauthorized Negative

3    Option Programs as alleged herein, to receive a statutory trebling of their restitutionary award

4    pursuant to CAL. CIV. CODE § 3345.

<center>

**COUNT III**

**PLAINTIFFS ACKBARALI AND BAXTER AGAINST INTELIUS, INC. AND**

**INTELIUS SALES COMPANY LLC**

**FOR VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT**

</center>

80.      Plaintiffs by themselves and other similarly situated "consumer" members of the Class incorporate by reference and reallege each and every paragraph alleged above as though fully alleged herein.

81.      Plaintiffs are "consumers" within the meaning of CAL. CIV. CODE §1761(d).

82.      Plaintiffs have complied with the requirements of Civil Code 1782. On July 29, 2009, Plaintiff Baxter sent the Intelius Defendants a letter detailing their violations of the CLRA and demanding that the Intelius Defendants correct, and otherwise rectify their violations of Section 1770 of the CLRA on behalf of herself and all other similarly situated California resident consumers. Specifically, Plaintiff Baxter sent the July 29, 2009 CLRA letter by certified mail, return receipt requested. The Intelius Defendants did not make an appropriate correction, or other remedy within thirty days of Plaintiff Baxter's July 29, 2009 CLRA letter, or otherwise.

83.      The Intelius Defendants' acts, conduct and practices, as alleged herein, are unlawful and in violation of the Consumers Legal Remedies Act, Civ. Code § 1770, subsections (2), (3), (13), (14), (17) and (19). Intelius misrepresents and deceptively discloses the source, sponsorship, and approval of the Negative Option Programs and misrepresents and deceptively discloses Intelius' affiliation, connection and relationship with defendant Adaptive. Intelius makes false and misleading statements that Plaintiffs and the Class will receive $10 cash back or a free credit report, without sufficiently disclosing that the reason for, or existence of these price reductions, which is a means to cause Plaintiff and the Class to inadvertently enroll in the Negative

1  Option Programs. Intelius misrepresents the legal effect of the actions taken by Plaintiffs and the
2  Class on the interstitial page for the Negative Option Programs as obligating Plaintiffs and the
3  Class to make recurring monthy payments for the Negative Option Programs, and otherwise
4  represents that the act of providing an email address and clicking the Confirmation Button confers
5  or involves rights, remedies and/or obligations which such actions do not have or involve, and/or
6  which are prohibited by law. Intelius represents on the interstitial pages for the Negative Option
7  Programs that Plaintiffs and the Class will receive $10 cash back or a free credit report when the
8  earning of that benefit is contingent upon Plaintiffs and the Class members' further action to
9  redeem such rebate, discount, or other economic benefit subsequent to the consummation of the
10  transaction for the Requested Information and/or the Negative Option Program(s). Intelius also
11  inserts unconscionable provisions in the language on the interstitial page for the Negative Option
12  Programs that Intelius asserts, *inter alia*, is binding on Plaintiffs and the Class, including obligating
13  Plaintiffs and the Class to pay repetitive monthly memberships for the Negative Option Programs
14  without adequate legal consideration or offer and acceptance.

15  84.     Plaintiffs and other consumers are deceived and are likely to continue to be
16  misled or deceived by the language, layout, process, procedures and organization of the
17  Intelius.com website as it relates to the Negative Option Programs. Plaintiffs were tricked by the
18  deceptive nature of Defendants' presentation of the interstitial page for the Negative Option
19  Programs, as evidenced by the fact that they became enrolled in Negative Option Programs for
20  which they did not intend to enroll. Nor did Plaintiffs have knowledge of such enrollment until
21  disclosed to them in a billing statement by their credit card companies, *i.e.*, Plaintiffs relied on
22  Defendants' unlawful practices concerning the Negative Option Programs.

23  85.     Plaintiff Ackbarali, suffered damage as a direct and proximate result of
24  Defendants' untrue and misleading post-transaction advertising of the Negative Option Programs
25  by being charged, and paying for, unrefunded "membership" charges for the Negative Option
26  Programs. Plaintiff Baxter suffered damage as a result of Defendants' untrue and misleading post-
27  transaction advertising of the Negative Option Programs by being charged, and paying for
28  Negative Option Program(s) "membership" charges, which charges were refunded following

FIRST AMENDED CLASS ACTION COMPLAINT                                                    - 29 -
No. 8:09-cv-01031-AG-MLG

1   Baxter's serving Defendants a "demand letter" in compliance with section 1782 of the Civil Code.
2   Baxter's interest charges accrued from Negative Option Program charges are outstanding and
3   unrefunded.

4       86.     On behalf of themselves and the members of the Class, Plaintiffs seek injunctive
5   relief to halt the continuing harm resulting from the Intelius Defendants' acts, practices, and
6   course(s) of conduct in violation of the CLRA. In addition, Plaintiffs seek restitution from Intelius
7   of the unlawful revenues and gains from the Negative Option Programs and restoration of the
8   status quo ante enrollment in the Negative Option Programs, including declaration that the
9   Negative Option Program memberships of Plaintiffs and the Class deemed void *ab initio* and
10  restitution / disgorgement of membership fees awarded, and any other relief the Court deems
11  acceptable, in accordance with Civil Code § 1780.

12  **VI.    JURY TRIAL DEMAND**

13      87.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs
14  demand a trial by jury of all of the claims asserted in this Complaint so triable.

15  **VII.   PRAYER FOR RELIEF**

16      WHEREFORE, Plaintiffs and the Class pray for relief and judgment as follows:

17      A.     For an order declaring that this action is properly maintained as a class action and
18  certifying a class representative in accordance with Rule 23 of the Federal Rules of Civil
19  Procedure;

20      B.     For an order awarding Plaintiffs and the members of the Class damages, restitution
21  and/or disgorgement and/or other equitable relief as the Court deems proper, including but not
22  limited to the imposition of a constructive trust upon Defendants profits resulting from the
23  unlawful, unfair, misleading and deceptive business acts and practices described herein;

24      C.     For an order enjoining Defendants from continuing to engage in the unlawful, unfair
25  and misleading and deceptive business acts and practices, as alleged herein;

26      D.     For treble recovery on all restitutionary awards to senior citizen members of the
27  Class pursuant to Cal. Civ. Code § 3345;

28

FIRST AMENDED CLASS ACTION COMPLAINT                                              - 30 -
*No. 8:09-cv-01031-AG-MLG*

1    E.    For an order awarding Plaintiffs and the members of the Class pre-judgment and

2    post-judgment interest;

3    F.    For an order awarding attorneys' fees and costs of suit, including experts' witness

4    fees as permitted by law; and

5    G.    Such other and further relief as this Court may deem just and proper.

6    Dated: January 7, 2010                    Respectfully submitted,

7                                              FINKELSTEIN & KRINSK LLP

8

9
                                              By
10                                                 William R. Restis

11                                               Jeffrey R. Krinsk
                                                 Mark L. Knutson
12                                               501 West Broadway, Suite 1250
                                                 San Diego, CA 92101-3593
13                                               Telephone: (619) 238-1333
                                                 Facsimile: (619) 238-5425
14                                               Email: wrr@classactionlaw.com

15                                               Counsel for Plaintiffs
                                                 Denise Baxter and Evelyn Ackbarali
16

17

18

19

20

21

22

23

24

25

26

27

28
     FIRST AMENDED CLASS ACTION COMPLAINT                                    - 31 -
     No. 8:09-cv-01031-AG-MLG

| 1 | **CERTIFICATE OF SERVICE** |

2

3       I hereby certify that on January 8, 2010, I filed **FIRST AMENDED CLASS ACTION**

4   **COMPLAINT FOR (1) UNFAIR AND DECEPTIVE BUSINESS PRACTICES IN**

5   **VIOLATION OF CAL. BUS. & PROF CODE §17200, ET SEQ.; (2) FALSE**

6   **ADVERTISING IN VIOLATION OF CAL. BUS. & PROF. CODE §17500, ET SEQ.; (3)**

7   **VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE**

8   **§17700** with the Clerk of the Court. I hereby certify that I have mailed by overnight delivery true

9   and correct copies of said documents to the following participants:

10

11  Christopher T. Wion
    Danielson Harrigan Leyh & Tollefson LLP
12  999 Third Avenue, Suite 4400
    Seattle, WA 98104
13  Tel: (206) 623-1700
    Fax:(206) 623-8717
14  Attorney for Intelius Inc. & Intelius Sales Company LLC

15  Robert J. Herrington
    Skadden, Arps, Slate, Meagher & Flom
16  300 South Grand Avenue
    Los Angeles, CA 90071-3144
17  Tel: (213) 687-5000
    Fax: (213) 687-5600
18  Attorney for Adaptive Marketing, LLC

19

20      I declare under penalty of perjury under the laws of the United States of America and the
    State of California that the foregoing is true and correct. Dated this 8th day of January, 2010 at
21  San Diego, California.

22

23                                              Andrea Vasquez
                                                Legal Assistant
24

25

26

27

28

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JAN 1 2 2010

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

IN RE:

MDL Docket No. 2140

**INTELIUS, INC., POST-TRANSACTION
MARKETING AND SALES PRACTICES
LITIGATION**

## PROOF OF SERVICE

I hereby certify that a copy of the foregoing documents: Opposition of Baxter

Plaintiff's to Motion to Transfer and Consolidation; Response of Baxter Plaintiff's to Motion to

Transfer and Consolidation; and William R.estis' Declaration of Baxter Plaintiff's to Motion to

Transfer and Consolidation was served by FEDERAL EXPRESS NEXT DAY BUSINESS DAY

DELIVERY on January 11, 2010 to the following:

### SEE ATTATCHED SERVICE LIST

I declare under penalty of perjury that the foregoing is true and correct. Executed this 11th

day of January 2010, at San Diego, California.

Andrea Vasquez

- 1 -

Docket: 2140 - IN RE: Intelius, Inc., Post-Transaction Marketing and Sales Practices Litigation
Status: Pending on //
Transferee District:          Judge:

**ATTORNEY - FIRM**                    **REPRESENTED PARTY(S)**

Harrigan, Arthur W.
DANIELSON HARRIGAN & TOLLEFSON LLP
999 Third Avenue
Suite 4400
Seattle, WA 98104

=> **Phone: (206) 623-1700  Fax: (206) 623-8717  Email: arthurh@dhlt.com**
Intelius Sales Co., LLC aka Intelius Sales, LLC*; Intelius, Inc.*

Herrington, Robert J.
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
300 South Grand Avenue
Suite 3400
Los Angeles, CA 90071-3144

=> **Phone: (213) 687-5000  Fax: (213) 687-5600  Email: Robert.Herrington@skadden.com**
Adaptive Marketing LLC*

Restis, William R.
FINKELSTEIN & KRINSK
501 West Broadway
Suite 1250
San Diego, CA 92101-3579

=> **Phone: (619) 238-1333  Fax: (619) 238-5425  Email: wrr@classactionlaw.com**
Baxter, Denise*

Swope, Karin B.
KELLER ROHRBACK LLP
1201 Third Avenue
Suite 3200
Seattle, WA 98101

=> **Phone: (206) 623-1900  Fax: (206) 623-3384  Email: kswope@kellerrohrback.com**
Cramer, Edith Anna*; Keithly, Bruce*; Lee, Donovan*

Note: Please refer to the report title page for complete report scope and key.